# IN THE SUPREME COURT OF TEXAS

━━━━━━━

No. 12-0661

━━━━━━━

EWING CONSTRUCTION COMPANY, INCORPORATED, PETITIONER,

v.

AMERISURE INSURANCE COMPANY, RESPONDENT

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

ON CERTIFIED QUESTION FROM THE
COURT OF APPEALS FOR THE FIFTH CIRCUIT

━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━━

**Argued February 27, 2013**

JUSTICE JOHNSON delivered the opinion of the Court.

This case comes to us from the United States Court of Appeals for the Fifth Circuit on certified questions. The controversy centers on the contractual liability exclusion in a Commercial General Liability (CGL) insurance policy. The certified questions are:

> 1. Does a general contractor that enters into a contract in which it agrees to perform its construction work in a good and workmanlike manner, without more specific provisions enlarging this obligation, "assume liability" for damages arising out of the contractor's defective work so as to trigger the Contractual Liability Exclusion.
>
> 2. If the answer to question one is "Yes" and the contractual liability exclusion is triggered, do the allegations in the underlying lawsuit alleging that the contractor violated its common law duty to perform the contract in a careful, workmanlike, and non-negligent manner fall within the exception to the contractual liability exclusion for "liability that would exist in the absence of contract."

*Ewing Constr. Co. v. Amerisure Ins. Co.*, 690 F.3d 628, 633 (5th Cir. 2012). We answer the first question "no" and do not answer the second.

## I. Background

In 2008, Ewing Construction Company, Inc. (Ewing) entered into a standard American Institute of Architects contract with Tuluso-Midway Independent School District (TMISD) to serve as general contractor to renovate and build additions to a school in Corpus Christi, including constructing tennis courts. Shortly after construction of the tennis courts was completed, TMISD complained that the courts started flaking, crumbling, and cracking, rendering them unusable for their intended purpose of hosting competitive tennis events. TMISD filed suit in Texas state court against Ewing and others[1] (the underlying suit). Its damage claims against Ewing were based on faulty construction of the courts and its theories of liability were breach of contract and negligence.[2]

---

[1] TMISD sued LaMarr Womack Associates, as design architects; Jaster-Quintanilla San Antonio, L.L.P., as structural engineer; Ewing as construction contractor; and Liberty Mutual Insurance Company and Liberty Mutual Insurance Group (collectively, Liberty Mutual) as issuer of a performance bond conditioned on Ewing's "faithful performance of the work in accordance with the plans, specifications, and contract documents." Specifically, its pending claims against Liberty Mutual in the underlying suit are as follows:

> Defendant Ewing has not performed the work using ordinary care and has not performed the work in accordance with the plans, specifications, and contract documents and has breached its contract, resulting in damage to Plaintiff. Therefore Plaintiff is entitled to call upon Liberty Mutual Insurance Company, and, alternatively, Liberty Mutual Group, [I]nc., for payment of all sums for which Defendant Ewing has liability to Plaintiff, (including all damages, costs and fees), growing out of the non-performance of the work under the contract in question. Plaintiff seeks recovery from the Liberty Mutual Defendants all sums claimed against Ewing Construction Company in this Petition.

[2] TMISD first sued Ewing for violation of the Texas Deceptive Trade Practices Act, *see* TEX. BUS. & COM. CODE §§ 17.01–.926, and common law misrepresentation in addition to its breach of contract and negligence claims. It omitted those claims in amended pleadings.

Ewing tendered defense of the underlying suit to Amerisure Insurance Company, its insurer under a commercial package policy that included CGL coverage. Amerisure denied coverage,[3] prompting Ewing to file suit in the U.S. District Court for the Southern District of Texas. There, Ewing sought a declaration that Amerisure had, and breached, duties to defend Ewing and indemnify it for any damages awarded to TMISD in the underlying suit. Based on its claims that Amerisure had those duties and breached them, Ewing also sought relief under Chapter 542 of the Texas Insurance Code (the Prompt Payment of Claims Act) and attorney's fees. Amerisure answered and counterclaimed, seeking a declaration that it owed Ewing neither a duty to defend nor a duty to indemnify. Amerisure did not deny that Ewing established coverage under the policy's insuring agreements; rather, it urged that policy exclusions, including the contractual liability exclusion, precluded coverage and negated its duties to defend and indemnify. On cross motions for summary judgment, the district court denied Ewing's motion, granted Amerisure's motion based on the contractual liability exclusion, and entered a final judgment dismissing the entire case.

The district court's analysis relied in large part on *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010), in which this Court interpreted the contractual liability exclusion in a CGL policy. *Ewing Constr. Co. v. Amerisure Ins. Co.*, 814 F. Supp.2d 739, 746-48 (S.D. Tex. 2011). The district court determined that *Gilbert* "stands for the proposition that the contractual liability exclusion applies when an insured has entered into a contract and, by doing so, has assumed liability for its own performance under that contract." *Id.*

---

[3] Although the certified questions reference only the contractual liability exclusion, Amerisure asserts that it reserved its rights as to and refused to defend on the basis of several exclusions.

3

at 747.  The court concluded that TMISD's pleadings showed Ewing assumed liability for its own construction work pursuant to the contract such that it would be liable for failing to perform under the contract if the work was deficient.  *Id.*  The court concluded that the CGL policy's contractual liability exclusion applied to exclude coverage.  *Id.* at 747-48.  The court further held that the exception to the exclusion was not applicable because TMISD's claims against Ewing sounded only in contract, not tort, and did not entail liability for damages "the insured would have in the absence of the contract."  *Id.* at 752.  The court concluded that Amerisure had no duty to either defend or indemnify TMISD in the underlying suit.  *Id.* at 752-53.

On appeal, the Fifth Circuit, in a 2-1 opinion, initially affirmed the district court's judgment on the duty to defend but vacated and remanded with respect to the duty to indemnify and the related Prompt Payment of Claims Act issue to await the results of the underlying suit.  *Ewing Constr. Co. v. Amerisure Ins. Co.*, 684 F.3d 512 (5th Cir. 2012), *withdrawn by*, 690 F.3d 628 (5th Cir. 2012).  Ewing petitioned for rehearing, and the Fifth Circuit withdrew its opinion and certified the above questions to this Court.  *Ewing Constr. Co.*, 690 F.3d at 633.[4]

Under its CGL policy, Amerisure assumed two duties, subject to the policy terms, limitations, and exclusions: (1) the duty to defend suits seeking damages from Ewing for an event potentially covered by the policy, and (2) the duty to indemnify Ewing by paying covered claims and judgments against it.  *See D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co.*, 300 S.W.3d 740, 743 (Tex. 2009).  We have characterized these two duties as "distinct and separate" in that one may exist

---

[4] We have jurisdiction under Article 5 of the Texas Constitution and TEX. R. APP. P. 58.1.

4

without the other.  *Id.* (quoting *Utica Nat'l Ins. Co. v. Am. Indem. Co.*, 141 S.W.3d 198, 203 (Tex. 2004)).  We first consider the duty to defend.

## II.  Duty to Defend

## A. Standard of Review and Burden of Proof

Texas courts follow the eight corners rule in determining an insurer's duty to defend. *Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 380 (Tex. 2012).  Under that rule, courts look to the facts alleged within the four corners of the pleadings, measure them against the language within the four corners of the insurance policy, and determine if the facts alleged present a matter that could potentially be covered by the insurance policy. *Id.*  The factual allegations are considered without regard to their truth or falsity and all doubts regarding the duty to defend are resolved in the insured's favor. *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 491 (Tex. 2008).  In reviewing the pleadings and making the foregoing determinations, courts look to the factual allegations showing the origin of the damages claimed, not to the legal theories or conclusions alleged. *See Evanston*, 370 S.W.3d at 380; *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merchs. Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997) (per curiam).

The insured has the initial burden to establish coverage under the policy. *Gilbert*, 327 S.W.3d at 124.  If it does so, then to avoid liability the insurer must prove one of the policy's exclusions applies. *Id.*  If the insurer proves that an exclusion applies, the burden shifts back to the insured to establish that an exception to the exclusion restores coverage. *Id.*

5

## B. The Underlying Suit and the Exclusion

The relevant allegations in TMISD's live pleading in the underlying suit are as follows. Ewing contracted with TMISD to build tennis courts and Ewing subcontracted all or part of the construction work. Shortly after construction was completed, "[s]erious tennis court cracking and flaking problems began . . . and have continued since. Chunks of the court surfaces are coming loose. Flaking, crumbling, and cracking make the courts unusable for their intended purpose, competitive tennis events." With respect to Ewing, TMISD claims damages on both contractual and negligence theories of liability:

> 20. Defendant Ewing Construction has breached its contractual commitments, proximately causing damages to Plaintiff. On information and belief, Plaintiff says that Defendant Ewing and/or its subcontractors breached its contract in the following respects:
>
> | | |
> |---|---|
> | a) | Failing to complete construction in accordance with the contract plans and specifications; |
> | b) | Failing to exercise ordinary care in the preparation, management and execution of construction; |
> | c) | Failing to perform in a good and workmanlike manner; and |
> | d) | Failing to properly retain and supervise subcontractors. |
>
> 21. Furthermore, Defendant Ewing Construction and/or its subcontractors was/were guilty of negligence proximately causing damages to Plaintiff in the following respects:
>
> | | |
> |---|---|
> | a) | Failing to properly prepare for and manage the construction; |
> | b) | Failing to properly retain and oversee subcontractors; |
> | c) | Failing to perform in a good and workmanlike manner; and |
> | d) | Failing to properly carry out the construction so that it was completed in accordance with the plans and specifications. |

TMISD further generally alleges that Ewing was negligent by breaching its duty to use ordinary care in the performance of its contract.

6

Amerisure's policy provides that the insurance applies to

> "bodily injury" and "property damage" only if: (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and] (2) The "bodily injury" or "property damage" occurs during the policy period . . . .

Exclusion 2(b)—the contractual liability exclusion—and its exceptions are as follows:

> **2. Exclusions**
> This insurance does not apply to:
>
> . . .
>
> **b. Contractual Liability**
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> **(1)** That the insured would have in the absence of the contract or agreement; or
>
> **(2)** Assumed in a contract or agreement that is an "insured contract" . . . .

Amerisure does not dispute that the alleged defects in the tennis courts occurred during the policy period and constitute "property damage" caused by an "occurrence" within the scope of the policy's insuring agreement.

In *Gilbert* this Court interpreted a CGL policy's contractual liability exclusion and exception that were substantively the same as those in Amerisure's policy. There, the dispute concerned whether the insurer was obligated to indemnify its insured. We held that under the facts in that case there was no coverage because the exclusion applied and the exception did not. *Gilbert*, 327 S.W.3d at 121. Although this case involves both duties to defend and to indemnify, *Gilbert*'s interpretation of the contractual liability exclusion guides our determination.

7

## C. *Gilbert*

In *Gilbert* we addressed: (1) whether a CGL policy's contractual liability exclusion applied to exclude indemnity coverage for a third party's property damage claim where the only basis underlying the claim was the insured's contractual agreement to be responsible for the damage, and (2) if the exclusion applied, whether an exception to the exclusion operated to restore coverage. *Id.* The underlying suit in *Gilbert* involved an agreement for Gilbert Texas Construction, L.P., as general contractor, to build a light rail system for the Dallas Area Rapid Transit Authority (DART). *Id.* at 121-22. The contract between DART and Gilbert required Gilbert to protect adjacent property and to repair or pay for damage to any such property resulting from either (1) a failure to comply with the requirements of the contract, or (2) a failure to exercise reasonable care in performing the work.[5] During construction, heavy rain caused flooding to a building adjacent to the work site. The building's owner, RTR, sued Gilbert and others alleging various theories of liability including statutory violations, tort, and breach of contract as a third-party beneficiary of Gilbert's contract with DART. *Id.* Gilbert tendered defense of the underlying suit to its CGL insurers, but Underwriters, its excess carrier, refused to defend. *Id.* at 122-23. Gilbert asserted sovereign immunity as a defense in the underlying suit and the trial court granted summary judgment dismissing all RTR's claims except for the breach of contract claim. *Id.* at 123. Gilbert later settled the breach of contract claim

---

[5] Provision 10(b) of the contract was as follows:

> b. The Contractor shall protect from damage all existing improvements and utilities (1) at or near the work site and (2) on adjacent property of a third party . . . [and] repair any damage to those facilities, including those that are the property of a third party, resulting from failure to comply with the requirements of this contract or failure to exercise reasonable care in performing the work. If the Contractor fails or refuses to repair the damage promptly, [DART] may have the necessary work performed and charge the cost to the Contractor.

8

and sought indemnity from Underwriters. *Id.* Underwriters claimed that the policy's contractual liability exclusion applied and the breach of contract claim was excluded from coverage. *Id.*

On appeal, Gilbert argued that the contractual liability exclusion applied only in the limited situation in which the insured "assumes *another's* liability," such as that assumed in indemnity or hold-harmless agreements. *Id.* at 128 (emphasis added). We disagreed, noting that "had it been intended to be so narrow as to apply *only* to an agreement in which the insured assumes liability of another party by an indemnity or hold-harmless agreement, it would have been simple to have said so." *Id.* at 127.

We analyzed the exclusion by first addressing the terms in the policy: the commonly understood meaning of the term "assume" is to "undertake" and that of "liability" is "[t]he quality or state of being legally obligated or accountable." *Id.* With those terms in mind, we examined the specific facts, circumstances, and obligations in the underlying suit to determine whether the exclusion applied. *Id.*

Gilbert owed RTR a duty under general law to conduct its construction operations with ordinary care so as not to damage RTR's property. *Id.* In Gilbert's contract with DART, though, it undertook a specific contractual obligation to repair or pay for damage to third-party property resulting from either (1) a failure to comply with the requirements of the contract, *or* (2) a failure to exercise reasonable care in performing the work. *Id.*; *see* n.5, *supra.* The second obligation—to exercise reasonable care—mirrored Gilbert's duty under general law principles that would have made it liable for damages it negligently caused RTR. *Gilbert*, 327 S.W.3d at 127. Thus, because Gilbert's contractual liability for damages to RTR for failing to exercise ordinary care in performing

9

its work would not have differed from its liability for damages to RTR under general principles of law–such as negligence–Gilbert did not assume liability for damages in its contract under the second obligation sufficient to trigger the policy's contractual liability exclusion. *See id.*

But the first obligation Gilbert assumed—to repair or pay for damage to property of third parties such as RTR "resulting from a failure to comply with the requirements of this contract"— extended "*beyond* Gilbert's obligations under general law." *Id.* (emphasis added). Thus, we held that RTR's breach of contract claim "was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion." *Id.* In other words, Gilbert did not contractually assume liability for damages within the meaning of the policy exclusion unless the liability for damages it contractually assumed was greater than the liability it would have had under general law–in Gilbert's case, negligence. We then considered whether the exception to the exclusion brought Gilbert's liability to RTR back into coverage. *Id.* at 133-35. In doing so we recognized that the case involved "unusual circumstances" because Gilbert ordinarily could have been liable in tort for damages to RTR absent its contract, but under the facts of the case, the only basis for Gilbert's liability to RTR was RTR's claim for Gilbert's breach of the contract with DART. *Id.* We held that the exception was inapplicable because Gilbert's only liability for damages was for breach of contract. *Id.* at 135. Because the exclusion applied and the exception did not, there was no coverage. *Id.*

With these principles from *Gilbert* in mind, we turn to the coverage dispute between Ewing and Amerisure.

10

## D. Contractual Liability Exclusion

The contractual liability exclusion in Amerisure's policy excludes claims for damages based on an insured's contractual assumption of liability except for two instances: (1) where the insured's liability for damages would exist absent the contract, and (2) where the contract is an insured contract. Amerisure references statements we made in *Gilbert* that the contractual liability exclusion "means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except when the contract is an insured contract or when the insured would be liable absent the contract or agreement," *id.*, and argues that the exclusion applies because Ewing contractually undertook the obligation to construct tennis courts in a good and workmanlike manner and thereby assumed liability for damages if the construction did not meet that standard. Ewing, on the other hand, argues, in part, that this case is distinguishable from *Gilbert* because Ewing's agreement to construct the courts in a good and workmanlike manner does not enlarge its obligations beyond any general common–law duty it might have. That is, Ewing posits, its agreement to construct the courts in a good and workmanlike manner did not add anything to the obligation it has under general law to comply with the contract's terms and to exercise ordinary care in doing so. That being so, Ewing argues, its express agreement to perform the construction in a good and workmanlike manner did not enlarge its obligations and was not an "assumption of liability" within the meaning of the policy's contractual liability exclusion.[6] We agree with Ewing.

---

[6] Three *amicus* briefs supporting Ewing's position were submitted. The first was collectively submitted by the Associated General Contractors of America; Texas Building Branch, Associated General Contractors of America; TEXO, the Construction Association; Associated General Contractors, Houston Chapter; ABC of Texas; American Subcontractors Association, Inc.; ASA of Texas, Inc. The second was submitted by the Texas Association of Builders and the National Association of Home Builders. The third was collectively submitted by the Texas Apartment Association, Inc; Texas Hospital Association; Texas Hotel & Lodging Association; Texas Automobile Dealers

As we said in *Gilbert*, the exclusion means what it says: it excludes liability for damages the insured assumes by contract unless the exceptions bring the claim back into coverage. But we also determined in *Gilbert* that "assumption of liability" means that the insured has assumed a liability for damages that exceeds the liability it would have under general law. *Id.* at 127. Otherwise, the words "assumption of liability" are meaningless and are surplusage. *See Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 268 N.W.2d 65, 80-81 (Wis. 2004) ("The term 'assumption' must be interpreted to add something to the phrase 'assumption of liability in a contract or agreement.' Reading the phrase to apply to all liabilities sounding in contract renders the term 'assumption' superfluous."). And interpretations of contracts as a whole are favored so that none of the language in them is rendered surplusage. *E.g.*, *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 235 (Tex. 2003); *Liberty Mut. Ins. Co. v. American Employers Ins. Co.*, 556 S.W.2d 242, 245 (Tex. 1977).

TMISD's allegations that Ewing failed to perform in a good and workmanlike manner are substantively the same as its claims that Ewing negligently performed under the contract because they contain the same factual allegations and alleged misconduct. We have defined "good and workmanlike" as "that quality of work performed by one who has the knowledge, training, or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work." *Melody Home Mfg. Co. v. Barnes*, 741 S.W.2d 349, 354 (Tex. 1987) (discussing the implied warranty of good and workmanlike quality of services in connection with the repair of tangible goods). Negligence means

Association, Inc; Texas Association of School Boards Legal Assistance Fund; Texas Organization of Rural & Community Hospitals; International Council of Shopping Centers; Texas Community Association Advocates; Texas Association of Counties; Texas Municipal League; and Texas Building Owners and Managers Association, Inc.

the failure to use ordinary care, that is, failing to do that which a reasonable person or provider of the defendant's type would have done under the same or similar circumstances. *See 20801, Inc. v. Parker*, 249 S.W.3d 392, 398 (Tex. 2008). Based on these definitions, TMISD's claims that Ewing failed to perform in a good and workmanlike manner and its claims that Ewing negligently performed under the contract are substantively the same. *See Coulson v. Lake L.B.J. Mun. Util. Dist.*, 734 S.W.2d 649, 651 (Tex. 1987) ("We are unable to discern any real difference between the District's claim that Coulson's efforts were not good and workmanlike and did not meet the standards of reasonable engineering practice and its claim that Coulson was negligent in his performance of professional services."). And as Ewing points out, it had a common law duty to perform its contract with skill and care. *Id.* ("[T]he common law duty to perform with care and skill accompanies every contract . . . ." (citing *Montgomery Ward & Co. v. Scharrenbeck*, 204 S.W.2d 508, 510 (Tex. 1947))); *see Melody Home Mfg. Co.*, 741 S.W.2d at 354.[7]

Accordingly, we conclude that a general contractor who agrees to perform its construction work in a good and workmanlike manner, without more, does not enlarge its duty to exercise ordinary care in fulfilling its contract, thus it does not "assume liability" for damages arising out of its defective work so as to trigger the Contractual Liability Exclusion. We answer the first question "no" and, therefore, need not answer the second question.

### E. Liability Policy or Performance Bond

---

[7] We do not intend to disavow our prior holdings that when an injury is only to the subject matter of a contract, an action will sound in contract alone. *See Sw. Bell Tel. Co. v. Delanney*, 809 S.W.2d 493, 494 (Tex. 1991) ("When the only loss or damage is to the subject matter of the contract, the plaintiff's action is ordinarily on the contract."); *Jim Walter Homes, Inc. v. Reed*, 711 S.W.2d 617, 618 (Tex. 1986) ("When the injury is only the economic loss to the subject of a contract itself the action sounds in contract alone.").

13

Although not necessary to our answer, we address one additional argument Amerisure advances concerning the effect of our determination that the answer to question one is "no."

Recognizing that in *Lamar Homes, Inc. v. Mid-continent Casualty Co.* 242 S.W.3d 1, 16 (Tex. 2007) we held that a claim for an insured's faulty workmanship can be an "occurrence" triggering coverage, Amerisure asserts that CGL policies are intended to protect an insured when the insured damages another's property, not to serve as a performance bond covering an insured's own work. And, if we find that the exclusion does not apply here, it further argues, CGL policies will effectively be transformed into performance bonds. *See Wilshire Ins. Co. v. RJT Constr., L.L.C.*, 581 F.3d 222, 226 (5th Cir. 2009).

We do not agree. Amerisure's argument presumes there are not other policy exclusions and coverage limitations to be considered. But, as we referenced above, in its brief Amerisure asserts that it reserved its rights to deny coverage for more reasons than the contractual liability exclusion. However, to address Amerisure's claims directly, we note that in *Lamar Homes* we considered whether allegations of defective construction or faulty workmanship that damaged only a general contractor's own work constituted an "occurrence" or "property damage" under a CGL policy's insuring agreement. 242 S.W.3d at 7. We ultimately concluded that "allegations of unintended construction defects may constitute an 'accident' or 'occurrence' under the CGL policy and that allegations of damage to or loss of use of the home itself may also constitute 'property damage' sufficient to trigger the duty to defend under a CGL policy." *Id.* at 4. Or, as we later said in *Gilbert*: "In *Lamar Homes*, we said a breach of contract can constitute an occurrence that causes property

14

damage, thus bringing some breach of contract claims within the general grant of coverage for purposes of determining a duty to defend." 327 S.W.3d at 132.

In *Lamar Homes* we focused on whether the underlying allegations for defective construction or faulty workmanship fell within the broad coverage granted by the CGL policy's insuring agreement—not whether any of the policy's exclusions applied to exclude coverage. 242 S.W.3d at 10 (explaining that the insuring agreement grants the insured broad coverage, which is then narrowed by the policy's exclusions that operate to restrict and shape the coverage otherwise afforded by the insuring agreement). We explained that "[m]ore often, however, faulty workmanship will be excluded from coverage by specific exclusions because that is the CGL's structure." *Id.* We mentioned some of the business risk exclusions in the policy having specific application to the construction industry, but did not determine their applicability. *Id.* at 10-11. Because the policy contains exclusions that may apply to exclude coverage in a case for breach of contract due to faulty workmanship, our answer to the first certified question is not inconsistent with the view that CGL policies are not performance bonds.

### IV. Conclusion

We answer the first certified question "no" and do not answer the second.

_____
Phil Johnson
Justice

**OPINION DELIVERED:** January 17, 2014

15