# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

June 27, 2014

Lyle W. Cayce
Clerk

No. 11-10166

DOUG CROWNOVER and KAREN CROWNOVER,

Plaintiffs - Appellants

v.

MID-CONTINENT CASUALTY COMPANY,

Defendant - Appellee

Appeals from the United States District Court
for the Northern District of Texas

Before KING, BENAVIDES, and DENNIS, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

The question in this diversity case is whether an insurance company, Mid-Continent Casualty Co. ("Mid-Continent"), is obligated under Texas law to pay for damage caused by one of its insureds, Arrow Development, Inc. ("Arrow"), when Arrow failed to promptly correct work in the home that it had constructed for Doug and Karen Crownover and which failed to conform to the requirements of the construction contract into which Arrow and the Crownovers had entered. An arbitrator had earlier found Arrow liable to the Crownovers for breaching this express warranty to repair and awarded them damages. Because Arrow filed for bankruptcy, however, the Crownovers are limited to recovering what they can from Arrow's insurance policies. They therefore sued Mid-Continent

in federal court for the damages owed to them by Arrow, and both parties moved for summary judgment. The district court granted summary judgment for Mid-Continent.

We conclude that, consistent with Texas law and considering the Texas Supreme Court's decisions in *Gilbert Texas Construction, L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118 (Tex. 2010), and *Ewing Construction Co. v. Amerisure Insurance Co.*, 420 S.W.3d 30 (Tex. 2014), Mid-Continent has demonstrated that an exclusion from coverage applies and that the Crownovers have failed to show that an exception to that exclusion applies. We also conclude that the district court committed no error in granting summary judgment to Mid-Continent. Accordingly, we AFFIRM.

## BACKGROUND

### I.

In October 2001, the Crownovers entered into a construction contract with Arrow to construct a home on their land in Sunnyvale, Texas. The contract contained a warranty-to-repair clause, which in paragraph 23.1 provided that Arrow would "promptly correct work . . . failing to conform to the requirements of the Contract Documents." The work was completed in November 2002, but by early 2003, cracks began to appear in the walls and foundation of the Crownovers' home. Additional problems with the heating, ventilation, and air conditioning ("HVAC") system caused leaking in exterior lines and air ducts inside the Crownovers' home. To compensate for defects in the HVAC system, the system's mechanical units ran continuously in order to heat or cool the house. In all, the Crownovers paid several hundred thousand dollars to fix the problems with the foundation and HVAC system.

### II.

The Crownovers attempted to have Arrow correct the problems and eventually sought legal relief. Their demand letters were forwarded to Mid-Continent, but to no avail. The Crownovers then initiated an arbitration

2

proceeding against Arrow.  The arbitrator determined that the Crownovers had a meritorious claim for breach of the express warranty to repair contained in paragraph 23.1 of their contract with Arrow, which was not barred by the statute of limitations.  Because the arbitrator awarded damages to the Crownovers on that ground, she declined to decide whether the Crownovers' other claims were barred by a statute of limitations.

Arrow later filed for bankruptcy.  In June 2009, the bankruptcy court lifted the automatic stay but limited the Crownovers' recovery to any amount they could recover from an applicable insurance policy. (To date, Arrow has not paid the Crownovers any money.)  In July 2009, the Crownovers sent a letter to Mid-Continent, demanding that the insurance company pay the arbitration award.  Mid-Continent denied their demand in August 2009, citing several insurance policy defenses and exclusions.

The Crownovers then sued Mid-Continent for breach of contract.  Both parties moved for summary judgment.  Ultimately, the district court granted Mid-Continent's motion and denied the Crownovers' motion.  In its opinion, the district court examined an "Insuring Agreement," a provision that appeared (in exactly the same form) in a series of comprehensive general liability ("CGL") policies, by which Mid-Continent insured Arrow, from August 2001 through 2008.  The district court concluded that the Insuring Agreement covered Arrow while it constructed the Crownovers' home.  The Insuring Agreement states that Mid-Continent "will pay those sums that [Arrow] becomes legally obligated to pay as damages because of . . . 'property damage' to which this insurance applies."

Several exclusions apply to this general coverage provision, however.  The district court concluded that one of them, the contractual-liability exclusion, applied in the instant case, such that Mid-Continent was not obligated to indemnify Arrow for the damages it owed the Crownovers.  This exclusion states that "[t]his insurance does not apply to[] 'property damage' for which the insured

3

is obligated to pay damages by reason of the assumption of liability in a contract or agreement." There is, however, an exception to this exclusion, for "liability . . . [t]hat the insured would have in the absence of the contract or agreement." The district court noted that the arbitration award to the Crownovers was based only on Arrow's breach of the express warranty to repair contained in paragraph 23.1; the arbitrator explicitly declined to decide whether Arrow was liable to the Crownovers on any other ground. Thus, the district court held that because Arrow "became legally obligated to pay the arbitration damages on the basis of [its] contractually assumed liability," the contractual-liability exclusion applied with no applicable exception to the exclusion.

The Crownovers had argued that the district court should consider whether Arrow would have been liable in the absence of the express warranty to repair. Specifically, they had contended that the "implied warranty of good workmanship" continued to apply to the contract they had with Arrow because the contract contained no express disclaimer of such a warranty. The district court declined to adopt this argument, however. First, it noted that under *Gilbert*, it was confined to the actual facts of the case and could not consider hypothetical scenarios. Second, the district court reasoned that when a contract contains an express warranty of good workmanship, that warranty supersedes any implied warranty of the same.

The Crownovers subsequently filed motions for a new trial, to amend or modify the judgment, and for relief from the judgment, arguing that the district court had erred in ruling on implied warranties, a ground that had not been raised in Mid-Continent's motion for summary judgment. They further argued that no such waiver or disclaimer exists under Texas law. The district court denied their motions, finding that the Crownovers had raised the implied warranty issue in their briefing and that Mid-Continent was thus allowed to respond to their argument in its sur-reply. The district court also adhered to its

4

earlier reasoning that the express warranty of good workmanship superseded any implied warranty of the same. The Crownovers timely appealed.

## STANDARD OF REVIEW

"[We] appl[y] a *de novo* standard of review when determining whether a district court erred in granting summary judgment." *LaBarge Pipe & Steel Co. v. First Bank*, 550 F.3d 442, 449 (5th Cir. 2008). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Gates v. Tex. Dep't of Protective & Regulatory Servs.*, 537 F.3d 404, 417 (5th Cir. 2008). "[S]ubstantive law will identify which facts are material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When, as here, jurisdiction is based on diversity, we apply the substantive law of the forum state." *Holt v. State Farm Fire & Cas. Co.*, 627 F.3d 188, 191 (5th Cir. 2010). Thus, in this case, Texas law determines which facts are material.

## DISCUSSION

In light of the Texas Supreme Court's controlling analysis in *Gilbert*, and further explication in *Ewing*, we conclude that Mid-Continent has demonstrated that an exclusion to coverage applies and that the Crownovers have failed to show that an exception to that exclusion applies. We also conclude that the district court committed no error in granting summary judgment for Mid-Continent.

## I.

Under Texas law, "the insured has the [initial] burden of establishing coverage under the terms of the policy." *Gilbert*, 327 S.W.3d at 124 (citing *Ulico Cas. Co. v. Allied Pilots Ass'n*, 262 S.W.3d 773, 782 (Tex. 2008)). "If the insured proves coverage, then to avoid liability the insurer must prove the loss is within an exclusion." *Id.* (citing *Ulico Cas. Co.*, 262 S.W.3d at 782). "If the insurer

proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *Id.* (citing *Comsys Info. Tech. Servs., Inc. v. Twin City Fire Ins. Co.*, 130 S.W.3d 181, 193 (Tex. Ct. App. 2003)).

"The principles [Texas] courts use when interpreting an insurance policy are well established." *Id.* at 126.

> Those principles include construing the policy according to general rules of contract construction to ascertain the parties' intent. First, we look at the language of the policy because we presume parties intend what the words of their contract say. We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be meaningless. The policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense. Courts strive to honor the parties' agreement and not remake their contract by reading additional provisions into it.

*Id.* (citations omitted).

## II.

## A.

In *Gilbert*, the Texas Supreme Court addressed a contractual-liability exclusion and an exception to that exclusion identical to those here. The insured party was Gilbert Texas Construction ("Gilbert"), which contracted with the Dallas Area Rapid Transit Authority ("DART") to build a light rail system. *Id.* at 121-22. As part of the contract, Gilbert agreed to "protect the work site and surrounding property." *Id.* at 122. "During construction, Dallas suffered an unusually heavy rain, and a building adjacent to the construction area flooded." *Id.* The building owner ("RTR") sued Gilbert and DART for, *inter alia*, breach of contract. *Id.* Gilbert eventually settled with RTR, but Gilbert's insurer, Lloyd's of London ("Lloyd's"), refused to indemnify Gilbert on the ground that the contractual-liability exclusion applied. *See id.* Gilbert sued Lloyd's, and the case eventually reached the Texas Supreme Court. *Id.*

The Texas Supreme Court first explained that the contractual-liability exclusion "means what it says: it excludes claims when the insured assumes liability for damages in a contract or agreement, except . . . when the insured would be liable absent the contract or agreement." *Id.* at 128; *see also Ewing*, 402 S.W.3d at 37 ("[W]e . . . determined in *Gilbert* that 'assumption of liability' means that the insured has assumed a liability for damages that exceed the liability it would have under general law." (citing 327 S.W.3d at 127)). The court concluded that Gilbert had "assumed" liability by taking on liability in its contract that it would not otherwise have had under the law:

> Independent of its contractual obligations, Gilbert owed RTR the duty to comply with law and to conduct its operations with ordinary care so as not to damage RTR's property[] . . . . In its contract with DART, however, Gilbert undertook a legal obligation to protect improvements and utilities on property adjacent to the construction site, and to repair or pay for damage to any such property "resulting from a failure to comply with the requirements of this contract *or* failure to exercise reasonable care in performing the work." (emphasis added). The latter obligation—to exercise reasonable care in performing its work—mirrors Gilbert's duty to RTR under general law principles. The obligation to repair or pay for damage to RTR's property "resulting from a failure to comply with the requirements of this contract" extends beyond Gilbert's obligations under general law and incorporates contractual standards to which Gilbert obligated itself.

*Gilbert*, 327 S.W.3d at 127. The trial court had granted summary judgment in favor of Gilbert on all of RTR's theories of liability apart from breach of contract—in other words, all that remained was RTR's claim that Gilbert had breached the contract by causing damage "resulting from . . . failure to comply with the requirements of th[e] contract." *See id.* Therefore, when Gilbert settled with RTR, its "only potential liability remaining in the lawsuit was liability in excess of what it had under general law principles." *Id.* Thus, the court concluded that RTR's breach-of-contract claim "was founded on an obligation or liability contractually assumed by Gilbert within the meaning of the policy exclusion." *Id.*; *see also Ewing*, 420 S.W.3d at 36 ("In other words, Gilbert did

7

not contractually assume liability for damages within the meaning of the policy exclusion unless the liability for damages it contractually assumed was greater than the liability it would have had under general law—in Gilbert's case, negligence.").

The *Gilbert* court then considered whether the exception to the exclusion brought Gilbert's liability to RTR back into coverage. *See* 327 S.W.3d at 133-35. The court concluded that no exception applied to the exclusion—in other words, that Gilbert had not shown that it would have been liable to RTR "in the absence of the contract or agreement"—because Gilbert's only liability for damages was for breach of contract. *Id.* at 133-35. Because the exclusion applied and the exception did not, the *Gilbert* court concluded that there was no coverage. *Id.* at 135.

**B.**

Following oral argument in this case, a panel of this court certified two questions to the Texas Supreme Court that are germane to the Crownovers' dispute with Mid-Continent. *See Ewing Constr. Co. v. Amerisure Ins. Co.*, 690 F.3d 628, 633 (5th Cir. 2012). Those questions were:

> 1. Does a general contractor that enters into a contract in which it agrees to perform its construction work in a good and workmanlike manner, without more specific provisions enlarging this obligation, "assume liability" for damages arising out of the contractor's defective work so as to trigger the Contractual Liability Exclusion.

> 2. If the answer to question one is "Yes" and the contractual liability exclusion is triggered, do the allegations in the underlying lawsuit alleging that the contractor violated its common law duty to perform the contract in a careful, workmanlike, and non-negligent manner fall within the exception to the contractual liability exclusion for "liability that would exist in the absence of contract."

*Id.* The Texas Supreme Court answered the first question "no" and did not answer the second question, *Ewing*, 420 S.W.3d at 31, and, in so doing, further explicated the contours of the rule announced in *Gilbert*.

8

Ewing had entered into a contract with the Tuluso-Midway Independent School District ("TMISD") "to serve as general contractor to renovate and build additions to a school in Corpus Christi, including constructing tennis courts." 420 S.W.3d at 31. "Shortly after construction of the tennis courts was completed," however, "TMISD complained that the courts started flaking, crumbling, and cracking, rendering them unusable for their intended purpose of hosting competitive tennis events." *Id.* TMISD then brought suit against Ewing; "[i]ts damages claims against Ewing were based on faulty construction of the courts and its theories of liability were breach of contract and negligence." *Id.* at 31-32.

Ewing tendered defense of the underlying suit to its insurer, Amerisure Insurance Co. ("Amerisure"), under an insurance policy that included CGL coverage. *Id.* at 32. Amerisure denied coverage, and Ewing brought suit, seeking "a declaration that Amerisure had, and breached, duties to defend Ewing and indemnify it for any damages awarded to TMISD in the underlying suit." *Id.* Amerisure"urged that policy exclusions, including the contractual liability exclusion, precluded coverage and negated its duties to defend and indemnify." *Id.*

As in this case, "[t]he contractual liability exclusion in Amerisure's policy excude[d] claims for damages based on an insured's contractual assumption of liability except . . . where the insured's liability for damages would exist absent the contract." *Id.* at 36. Amerisure, relying on *Gilbert*, argued that the contractual-liability exclusion applied "because Ewing contractually undertook the obligation to construct tennis courts in a good and workmanlike manner and thereby assumed liability for damages if the construction did not meet that standard." *Id.* Ewing, distinguishing *Gilbert*, argued that its "agreement to construct the courts in a good and workmanlike manner d[id] not enlarge its obligations beyond any general common-law duty it might have," namely "the obligation it ha[d] under general law to comply with the contract's terms and to

exercise ordinary care in doing so." *Id.* The Texas Supreme Court agreed with Ewing. *Id.*

The court first noted that "TMISD's claim that Ewing failed to perform in a good and workmanlike manner and its claims that Ewing negligently performed under the contracts [were] substantively the same" and then observed that Ewing "had a common law duty to perform its contract with skill and care." *Id.* at 37. On this basis, the court held that "a general contractor who agrees to perform its construction in a good and workmanlike manner, without more, does not enlarge its duty to exercise ordinary care in fulfilling its contract" and "thus does not 'assume liability' for damages arising out of its defective work so as to trigger the Contractual Liability Exclusion." *Id.* at 38. The Texas Supreme Court therefore answered the first certified question from this court "no" and declined to address the second question.[1]

### III.

### A.

The district court did not err in concluding that Mid-Continent had demonstrated that the contractual-liability exclusion applies. The arbitrator found in favor of the Crownovers, concluding that Arrow had breached the express warranty to repair contained in paragraph 23.1 of the contract. That paragraph—which is virtually indistinguishable from the contract provision in *Gilbert* that the Texas Supreme Court determined "extend[ed] beyond Gilbert's obligations under general law and incorprate[d] contractual standards to which Gilbert obligated itself," *see* 327 S.W.3d at 122, 127—obligated Arrow to "promptly correct work . . . failing to conform to the requirements of the Contract Documents." Whereas contractually agreeing to repair damage resulting from a failure to exercise reasonable care in performing the work or agreeing to

---

[1] This court subsequently vacated the orderof the district court granting summary judgment in favor of Amerisure on the ground that coverage was excluded under the contractual-liability exclusion and remanded the case to the district court for further proceedings. *See Ewing Constr. Co. v. Amerisure Ins. Co.*, 744 F.3d 917, 917-18 (5th Cir. 2014).

perform work in a good and workmanlike manner would mirror a contractor's duty under general law, *see Ewing*, 420 S.W.3d at 37-38; *Gilbert*, 327 S.W.3d at 127, contractually agreeing to repair damage resulting from a failure to comply with the requirements of the contract would not, *see Gilbert*, 327 S.W.3d at 127. We therefore conclude that Mid-Continent has demonstrated that the contractual-liability exclusion applies.

In arguing to the contrary, the Crownovers cite paragraph 14.4 of the construction contract, which states that "[t]he Contractor warrants to the Owner . . . that the Work will be free from defects not inherent in the quality required or permitted, and that the Work will conform with the requirements of the Contract Documents" and submit that this express warranty of workmanship is equivalent to the implied warranty of workmanship that already exists under Texas law. Under *Gilbert*, the contractual-liability exclusion applies only if Arrow "assumed" a duty in its contract with the Crownovers that it did not already have under the law. However, the Crownovers' focus on whether paragraph 14.4 involved an assumption of liability beyond what Arrow would have been subject to under Texas law is misplaced. As Mid-Continent points out, paragraph 14.4 was not the basis for liability under the arbitration award. Rather, paragraph 23.1, which contains the "express warranty to repair," was the provision that the arbitrator decided that Arrow had breached. The Crownovers respond that paragraph 23.1 "merely states that Arrow must repair nonconforming work under paragraph 14.4" and that, therefore, a violation of paragraph 23.1 means that there was also a violation of paragraph 14.4.

However, that Arrow is liable under paragraph 23.1 does not automatically mean that it is liable under paragraph 14.4, even if under some circumstances, such as the instant case, the latter provision must be violated in order for the former provision to be violated. This is so because paragraph 14.4 includes a warranty by Arrow "that the Work will conform with the requirements of the Contract Documents," and paragraph 23.1 states that Arrow

11

"shall promptly correct Work rejected by the architect *or failing to conform to the requirements of the Contract*" (emphasis added). The arbitrator indicated that she was not ruling on whether any other claims were "barred by limitations," which suggests that it is possible that she thought that the Crownovers had a viable claim under paragraph 14.4 but that such a claim would nonetheless fail because it was barred by the statute of limitations. As such, her determination that Arrow was liable under paragraph 23.1 does not require a determination that Arrow must have also been liable under paragraph 14.4. Moreover, a builder may violate paragraph 14.4 by doing non-conforming work, but the failure to promptly correct such work as required by paragraph 23.1 is a separate violation of the contract.[2]

Amicus Texas Association of Builders ("TAB") argues that applying the contractual-liability exclusion here renders another exclusion and its corresponding exception, which are part of CGL contracts, meaningless. TAB refers to the "Your Work" exclusion, under which insurance does not cover "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" The exception to this exclusion provides for coverage "if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Here, subcontractors were involved in the work on the foundation of the Crownovers' home. TAB argues that applying the contractual-liability exclusion here would remove coverage when subcontractors caused the property damage, even though the subcontractor exception to the "Your Work" exclusion should bring the Crownovers' claim back under coverage.

---

[2] In their reply brief, the Crownovers suggest, for the first time and with little analysis, that in agreeing to paragraph 23.1, Arrow did not assume any obligation it did not already have under Texas law. "We need not address this argument, as it is raised for the first time in a reply brief." *E.g.*, *Medina Cnty. Envtl. Action Ass'n v. Surface Transp. Bd.*, 602 F.3d 687, 702 (5th Cir. 2010)). Nonetheless, paragraph 23.1 parallels the provision that the *Gilbert* court held constituted an exclusion. 327 S.W.3d at 127.

However, this argument assumes that the basis for liability here pertained to the work done initially by the subcontractors on the Crownovers' home. Yet the arbitrator held Arrow liable for failing to *repair*, per paragraph 23.1, not for the work done initially. Thus, the "Your Work" exclusion and the subcontractor exception would not apply in this case. Accordingly, we conclude that Mid-Continent has demonstrated that the contractual liability exclusion applies.

**B.**

Because Mid-Continent has demonstrated that a contractual-liability exclusion applies, the burden shifts to the Crownovers to establish that an exception to that exclusion applies. *Gilbert*, 327 S.W.3d at 124. They have failed to do so.

The Crownovers argue that the exception to the contractual-liability exclusion for "liability . . . [t]hat the insured would have in the absence of the contract or agreement" applies and that, therefore, Mid-Continent still has the duty to indemnify. Specifically, they contend that under *Gilbert*, the district court should have looked beyond the arbitration award. If the district court had done so, they reason, it would have determined that Arrow was liable for breaching not only the express warranty of good workmanship under paragraph 14.4, but also the implied warranty of good workmanship, which is identical in substance to the express warranty, but with a longer statute of limitations. Relatedly, they argue that the district court contravened Texas law in concluding that the express warranty of good workmanship contained in Arrow's construction contract with the Crownovers superseded any implied warranty of the same.

These arguments are unavailing. First, *Gilbert* does not permit us to look beyond the arbitration award. "[I]t is well settled that a claim based on a contract that provides indemnification from liability does not accrue until the [insured's] liability becomes fixed and certain." 327 S.W.3d at 134 (internal quotation marks omitted). "[T]he duty to indemnify arises from proven,

adjudicated facts." *Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 275 (Tex. Ct. App. 2001). The *Gilbert* court explained:

> As modified by the . . . exception, the exclusion precludes the insurer's liability for indemnity if the insured is obligated to pay only because of its contractually assumed liability. If the insured's liability is because of an *otherwise covered basis in addition to its contractually-assumed liability*, the . . . exception brings the claim back into coverage.

327 S.W.3d at 134 (emphasis added).

Thus, the exception applies only if Arrow is liable to the Crownovers "because of an otherwise covered basis in addition to its contractually-assumed liability." *Id.* Here, the only ground on which the arbitrator awarded damages to the Crownovers was the breach of the express warranty to repair contained in paragraph 23.1, which was part of Arrow's contractually assumed liability. Furthermore, the Crownovers' argument on this point depends on the premise that the arbitrator awarded damages based on paragraph 14.4 and, as previously explained, she did not. Accordingly, the exception does not apply. *See id.* at 134 ("Gilbert asserts no other basis for its settlement than the breach of contract claim; thus, Gilbert's settlement payment for which it seeks indemnity simply was not a liability for damages it had apart from its contract with DART, as it must have been in order for the . . . exception to apply.").

Additionally, the Crownovers' argument fails because the implied warranty of good workmanship was superseded by the express warranty of good workmanship. In *Beucher*, the Texas Supreme Court has held that "the parties' agreement may supersede the implied standard for workmanship [and thus] the implied warranty of good workmanship may be disclaimed by the parties when their agreement provides for the manner, performance or quality of the desired construction." 95 S.W.3d at 274-75. The Crownovers have failed to articulate any reason why the express warranty here fails to meet this requirement.

14

## IV.

Finally, the Crownovers argue that the district court erred in granting summary judgment by: (1) basing its decision on a rejection of the implied warranty of good workmanship; and (2) failing to give the Crownovers time to file a response, or a motion for leave to file a response, to Mid-Continent's sur-reply regarding this issue.  We disagree.

### A.

The district court did not impermissibly base its decision on a rejection of the implied warranty of good workmanship.  Both parties moved for summary judgment and each briefed all issues related to coverage, exclusions to coverage, and exceptions to exclusions.  The Crownovers raised the implied warranty of good workmanship in their briefing.  That the district court agreed with Mid-Continent's analysis on that issue is not comparable to granting summary judgment on a ground of which the non-movant had no notice.  *See Lozano v. Ocwen Fed. Bank, FSB*, 489 F.3d 636, 641 (5th Cir. 2007) (noting that the non-movant must be "on notice to present arguments" on each claim in their response to a summary judgment motion).  Accordingly, the district court did not "grant summary judgment *sua sponte* on grounds not requested by the moving party.'" *Baker v. Metro. Life Ins. Co.*, 364 F.3d 624, 632 (5th Cir. 2004) (internal quotation marks omitted).

### B.

The Crownovers cite no authority for reversing the grant of summary judgment based on the district court's refusal to provide them an opportunity to respond to Mid-Continent's arguments regarding the implied warranty of good workmanship.  Moreover, as we have now fully considered the Crownovers' arguments on this point, and conclude that they lack merit, any alleged error by the district court here is harmless.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.