

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| UNITED FIRE LLOYDS, | § | No. 08-23-00047-CV |
| | § | Appeal from the |
| Appellant, | § | 207th Judicial District Court |
| v. | § | of Comal County, Texas |
| JD KUNZ CONCRETE CONTRACTOR, INC., and EXPLOREUSA RV, LTD., | § | (TC# C2021-0734B) |
| Appellees. | § | |

## MEMORANDUM OPINION

This is an appeal from the trial court's order granting Appellees' motion for summary judgment and denying Appellant's cross-motion. In its order, the trial court found that Appellant United Fire Lloyds (United Fire) has a duty to indemnify its insured, Appellee JD Kunz Concrete Contractor, Inc. (JD Kunz), pursuant to a commercial general liability policy it issued to JD Kunz covering damages that occurred during a construction project it performed on behalf of Appellee ExploreUSA RV, LTD. (ExploreUSA). For the reasons set forth below, we affirm.[1]

---

[1] This case was transferred from our sister court in Austin pursuant to the Texas Supreme Court's docket equalization efforts. *See* TEX. GOV'T CODE ANN. § 73.001. We follow the Austin Court's precedent to the extent it conflicts with our own. *See* TEX. R. APP. P. 41.3.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The construction contract

ExploreUSA is a recreational-vehicle sales company in Alvin, Texas. In May of 2015, it entered into a contract with JD Kunz in which JD Kunz agreed to "[p]rovide all materials and labor to install [a] Complete Concrete System" covering over 12 acres to be used as ExploreUSA's "supercenter."[2] (the Construction Contract). In exchange, ExploreUSA agreed to pay JD Kunz $2,700,775.00 to complete the system. As discussed in more detail below, the Construction Contract contained detailed specifications for the work to be performed and provided that JD Kunz was "solely responsible for, has control over, and is fully responsible for all construction means, methods, techniques, procedures, coordination, safety, and sequences [and] shall coordinate all activities related to [its] work as defined herein."

### B. The commercial general liability policy

As required by the Construction Contract, JD Kunz obtained a commercial general liability (CGL) policy from United Fire, listing ExploreUSA as an additional insured, with a one-million-dollar limit per occurrence and a two-million-dollar aggregate limit.[3] The policy provided that United Fire had a duty to indemnify JD Kunz and to thereby pay any "sums that the insured becomes legally obligated to pay as damages because of . . . property damage to which this insurance applies." It further provided that United Fire had the "duty to defend" JD Kunz "against any suit seeking those damages," except those to which the insurance did not apply.

---

[2] Although JD Kunz was referred to as the "subcontractor" in the Construction Contract, there is no dispute that JD Kunz was considered the general contractor on the project.

[3] The policy stated that an "additional insured" would include "any person or organization to whom [JD Kunz] agreed to name as [an] additional insured by written contract or agreement." The parties do not dispute that ExploreUSA was an additional insured pursuant to this provision.

The policy contained a number of exclusions, three of which are germane to this appeal: (1) a "contractual liability" exclusion (applicable when an insured has assumed liability beyond its general duty to perform its work in a good and workmanlike manner); (2) a "your product" exclusion (applicable when the damages suffered related to a "product" that the insured manufactured, sold, handled, distributed, or disposed of); and (3) a "your work" exclusion (applicable when the damages suffered were caused by the insured's failure to perform its work in a good and workmanlike manner, i.e., for poor workmanship, but with an exception for work performed by subcontractors).

## C. The underlying liability lawsuit

Following project completion, ExploreUSA sued JD Kunz for breach of contract, alleging the "Concrete System showed signs of failure, unusual cracking, deterioration, and damage." ExploreUSA posited that the physical damage and system deterioration was attributable to "incorrect or inadequate performance of work by Kunz and/or its subcontractors." In particular, ExploreUSA alleged the system's failure resulted from: (1) the thickness of the concrete, which was not in accordance with the specifications in the Construction Contract and/or the standard practice in the industry; and (2) the reinforcing steel (the rebar) not being in the midsection of the pavement and "was in most cases placed directly upon the stabilized subgrade surface." ExploreUSA further alleged that after being notified of the damage, JD Kunz agreed to perform repairs under the Construction Contract's warranty provisions but failed to adequately address the system's failure. JD Kunz thereafter notified United Fire of the lawsuit, and United Fire agreed to provide JD Kunz a defense but reserved the right to refuse to indemnify JD Kunz for any damages awarded if it concluded a policy exclusion applied.

At the close of trial, the jury was asked three questions. First, it was asked if JD Kunz had failed to comply with the Construction Contract, to which the jury answered "Yes." Second, the jury was asked if JD Kunz's "failure, if any . . . to comply with a warranty [was] a producing cause of damages to ExploreUSA . . . ," to which the jury answered "No." And third, it was asked "[w]hat sum of money if any . . . would fairly and reasonably compensate ExploreUSA . . . for its damages, if any, that resulted from such failure to comply," to which the jury answered, "$1,700,000." In determining the amount of damages, the trial court instructed the jury that it was only to consider "[t]he reasonable and necessary cost to repair and replace the concrete."

The trial court thereafter entered a final judgment against JD Kunz in the amount of $2,291,747.73, to include attorney's fees, costs, and prejudgment interest (the underlying liability judgment).

## D. The insurance coverage lawsuit

Following the judgment, United Fire filed a petition seeking a declaratory judgment that it had no duty to indemnify JD Kunz due to three CGL policy exclusions: (1) the contractual-liability exclusion; (2) the your-product exclusion; and (3) the your-work exclusion. Both ExploreUSA and JD Kunz (collectively, the Kunz Defendants) filed general denials to the lawsuit and counterclaims against United Fire for, among other things, breach of contract and violation of the Texas Insurance Code for United Fire's refusal to indemnify JD Kunz. The Kunz Defendants thereafter filed traditional motions for summary judgment, asserting they were entitled to summary judgment on United Fire's request for declaratory relief and on their counterclaims. United Fire opposed the motions and filed its own motion for summary judgment, which the Kunz Defendants opposed.

As discussed in more detail below, in support of their motions for summary judgment, the parties all attached copies of the Construction Contract; the CGL policy; and the jury charge, jury

4

verdict, and final judgment from the underlying lawsuit. In addition, United Fire provided copies of its correspondence with JD Kunz in which it agreed to assume the duty to defend JD Kunz in the underlying lawsuit, with its reservation of the right to contest the duty to indemnify, as well as its final letter to JD Kunz advising that it believed coverage was precluded by the exclusions in the policy. The Kunz Defendants attached excerpts from the trial and deposition testimony of several witnesses who testified in the underlying litigation as to the cause of the concrete failure and damage, and which entities, i.e., which of JD Kunz's subcontractors, performed the work that led to the same.

At issue in all three summary judgment motions was the interpretation and application of the three CGL policy exclusions identified by United Fire in its request for declaratory relief, and whether any of the exclusions applied to preclude coverage for the underlying liability judgment.

### E.  The trial court's ruling

The trial court denied United Fire's motion for summary judgment and granted the Kunz Defendants' motion in part, ruling in the Kunz Defendants' favor on their claims for declaratory relief, declaring that United Fire had a duty to indemnify JD Kunz for the damages awarded in the underlying liability lawsuit.

The Kunz Defendants then filed motions for summary judgment seeking an award of attorney's fees, which United Fire initially opposed, arguing JD Kunz was not entitled to any such award and the amount requested was not reasonable or necessary. Shortly thereafter, however, the parties submitted a Rule 11 Agreement to the trial court indicating they reached an agreement on attorney's fees and wished to obtain a final judgment on the issue of whether United Fire owed a duty to indemnify JD Kunz for the underlying liability judgment. The Rule 11 Agreement stipulated to the amount of reasonable and necessary attorney's fees the Kunz Defendants had

5

incurred "to date," as well as the contingent amounts they would be entitled to if they prevailed on appeal.

Pursuant to the Rule 11 Agreement, the parties filed an agreed motion for severance and abatement of the Kunz Defendant's remaining claims. The parties also filed a joint motion for entry of a final judgment, stating they had "stipulated to prejudgment and post judgment interest," as well as the "reasonable and necessary attorney's fees for Defendants." However, the motion expressly stated that United Fire "still contests the issue of whether the [trial court] properly granted summary judgment on the duty to indemnify [and] reserves its right to address and contest this issue on appeal."

The trial court entered its final judgment in which it found, as a matter of law, that United Fire owed a "duty to indemnify J.D. Kunz for the underlying judgment." It further recognized the parties' Rule 11 Agreement and accordingly listed the attorney's fees the Kunz Defendants had already incurred as well as the contingent attorney's fees to be awarded if the Kunz Defendants prevailed on appeal, together with post-judgment interest on the calculated fees.[4] The trial court then severed all of the parties' remaining claims into a separate cause number, thereby making its judgment a final, appealable order from which United Fire appealed.

**ISSUES ON APPEAL**

United Fire's appellant's brief lists ten issues, which we group into four categories. United Fire generally asserts that the trial court erred by granting the Kunz Defendants' motions for summary judgment, by denying United Fire's motion for summary judgment, and by finding that

---

[4] The judgment provided that JD Kunz would be awarded "an additional $31,500 in attorney's fees for any appeal of this case to the Court of Appeals [and] an additional $9,000 in attorney's fees if there is oral argument at the Court of Appeals." And it further provided that ExploreUSA would be awarded "an additional $54,250 in attorney's fees for any appeal of this case to the Court of Appeals [and] an additional $15,500 in attorney's fees if there is oral argument at the Court of Appeals."

United Fire owed a duty to indemnify JD Kunz for the underlying judgment (Issues One, Two and Three). Although these issues are separately enumerated, they are not separately briefed. We analyze them according to the following categories within which they are subsumed.

In the first category, United Fire contends the contractual-liability exclusion in the CGL policy precludes coverage for the underlying liability judgment (Issues Four, Five, and Six). In the second category, United Fire contends the your-work exclusion precludes coverage (Issue Seven). In the third category, United Fire contends the your-product exclusion precludes coverage (Issues Eight and Nine). And in the fourth category, United Fire asks for clarification regarding when post-judgment interest on an award of appellate attorney's fees will begin to accrue if an appellate court enters judgment in favor of the Kunz Defendants (Issue Ten).

**STANDARD OF REVIEW**

We review a trial court's ruling on a motion for summary judgment de novo. *Eagle Oil & Gas Co. v. TRO-X, L.P.*, 619 S.W.3d 699, 705 (Tex. 2021) (citing *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013)). When, as here, a party moves for traditional summary judgment, the movant has the burden of demonstrating that no genuine issue of material fact exists and it is entitled to judgment as a matter of law. *See* TEX. R. CIV. P. 166a(c); *Nassar v. Liberty Mut. Fire Ins. Co.*, 508 S.W.3d 254, 257 (Tex. 2017) (per curiam). When a plaintiff moves for summary judgment, it must establish its right to summary judgment by conclusively proving all elements of its cause of action as a matter of law. *See Havlen v. McDougall*, 22 S.W.3d 343, 345 (Tex. 2000). "A matter is conclusively established if reasonable people could not differ as to the conclusion to be drawn from the evidence." *See Hibernia Energy III, LLC v. Ferae Naturae, LLC*, 668 S.W.3d 745, 761 (Tex. App.—El Paso 2022, no pet.) (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 815–16 (Tex. 2005)). "If the movant establishes its right to judgment as a matter of law, the burden shifts

7

to the nonmovant to present evidence raising a genuine issue of material fact precluding summary judgment, applying the same standard in determining whether reasonable and fair-minded jurors could differ in their conclusions considering all the evidence presented." *Id.* (citing *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam); *Nevarez v. USAA Fed. Sav. Bank*, 630 S.W.3d 416, 421–22 (Tex. App.—El Paso 2021, pet. denied)). Although the nonmoving party is not required to marshal all of its proof in response to a summary judgment motion, it must present countervailing evidence that raises a genuine fact issue on the challenged elements. *Duchene v. Hernandez*, 535 S.W.3d 251, 258 (Tex. App.—El Paso 2017, no pet.) (citing *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex. 2002)). The nonmovant fails in its burden of creating a fact issue when the evidence is "so weak as to do no more than create a mere surmise or suspicion of material fact." *Wade Oil & Gas, Inc. v. Telesis Operating Co., Inc.*, 417 S.W.3d 531, 540 (Tex. App.—El Paso 2013, no pet.); *see also Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010). If the movant fails to meet its burden, the burden does not shift to the nonmovant and the nonmovant need not respond or present any evidence at all. *See Chavez v. Kansas City S. Ry. Co.*, 520 S.W.3d 898, 899–900 (Tex. 2017) (per curiam); *see also Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014)).

In reviewing the trial court's decision on summary judgment, we view the evidence in a light most favorable to the nonmovant, "crediting evidence favorable to the non-movant if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022) (citing *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019)). We indulge every reasonable inference in favor of the nonmovant and resolve any doubts against the motion. *See Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d

8

39, 45 (Tex. 2017) (citing *City of Keller*, 168 S.W.3d at 824); *see also Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

When, as here, both parties move for summary judgment on the same issue and the trial court grants one motion but denies the other, the reviewing court must review the evidence presented by both sides, determine all questions presented, and render the judgment the trial court should have rendered. *Valence Operating*, 164 S.W.3d at 661.

APPLICABLE LAW

## A. General principles of contract construction apply to insurance policies

"An insurance policy is a contract that establishes the respective rights and obligations to which an insurer and its insured have mutually agreed." *Am. Nat'l Ins. Co. v. Arce*, 672 S.W.3d 347, 353 (Tex. 2023), reh'g denied (Sept. 1, 2023) (citing *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018) (internal quotation marks omitted)). Accordingly, we generally construe an insurance policy "using the same rules that govern the construction of any other contract." *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 270 (Tex. 2021) (citing *Menchaca*, 545 S.W.3d at 488 (internal quotation marks omitted)); *see also Arce*, 672 S.W.3d at 353 ("Insurance policies are construed as contracts and enforced as contracts").

When, as here, the parties dispute the meaning of the terms used in a contract, "our primary objective is to ascertain and give effect to the parties' intent as expressed in the instrument." *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 763 (Tex. 2018) (citing *Valence Operating*, 164 S.W.3d at 662); *see also RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015) (recognizing that a court's primary concern in construing an insurance policy is to ascertain the intentions of the parties as expressed in the document). The parties' "[o]bjective manifestations of intent control," and we therefore presume the "parties intended what the words of their contract say."

9

*URI, Inc.*, 543 S.W.3d at 763-64; *see also Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (to ascertain the parties' intent, a court must look to the language of the insurance policy itself and presume that the parties intended "what the words of their contract say") (citing *Don's Bldg. Supply, Inc. v. OneBeacon Ins. Co.*, 267 S.W.3d 20, 23 (Tex. 2008)). Thus, a "policy's terms are given their ordinary and generally-accepted meaning unless the policy shows the words were meant in a technical or different sense." *Gilbert.*, 327 S.W.3d at 126 (citing *Don's Bldg. Supply*, 267 S.W.3d at 23); *see also URI, Inc.*, 543 S.W.3d at 764 (courts "interpret the terms used in a contract according to their plain, ordinary, and generally accepted meaning unless the instrument directs otherwise"). We examine the entire agreement and seek to harmonize and give effect to all provisions so that none will be rendered meaningless. *Gilbert*, 327 S.W.3d at 126 (citing *MCI Telecomms. Corp. v. Tex. Utils. Elec. Co.*, 995 S.W.2d 647, 652 (Tex. 1999)).

When interpreting an insurance policy, we must also be "mindful of other courts' interpretations of policy language that is identical or very similar to the policy language at issue." *RSUI Indem. Co.*, 466 S.W.3d at 118 (citing *Trinity Universal Ins. Co. v. Cowan,* 945 S.W.2d 819, 824 (Tex. 1997)). Thus, in general, courts should "strive for uniformity in construing insurance provisions, especially where . . . the contract provisions at issue are identical across the jurisdictions." *Id*. (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. CBI Indus., Inc.,* 907 S.W.2d 517, 522 (Tex. 1995); *Zurich Am. Ins. Co. v. Nokia, Inc.*, 268 S.W.3d 487, 496–97 (Tex. 2008) (stressing "the importance of uniformity when identical insurance provisions will necessarily be interpreted in various jurisdictions")).

When there is an ambiguity in an insurance policy, or any "uncertainty" with respect to the terms used, we must construe the policy in favor of coverage. *RSUI Indem. Co.*, 466 S.W.3d at

118 (citing *Grain Dealers Mut. Ins. Co. v. McKee*, 943 S.W.2d 455, 459 (Tex. 1997)). In other words, when there are two reasonable interpretations of the terms used, we must resolve the matter by "adopting the construction that most favors the insured." *Id*. (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Hudson Energy Co*., 811 S.W.2d 552, 555 (Tex. 1991)); *see also Don's Bldg. Supply*, 267 S.W.3d at 23 (recognizing that if a "contract is susceptible to more than one reasonable interpretation, we will resolve any ambiguity in favor of coverage"). A policy is only ambiguous "if it is genuinely subject to more than one meaning after applying the pertinent rules of contract interpretation." *Nassar.*, 508 S.W.3d at 258 (citing *RSUI Indem. Co*, 466 S.W.3d at 118). However, it is well-established that an ambiguity does not exist simply because the parties provide conflicting interpretation of the terms set forth in a policy. *Gilbert*, 327 S.W.3d at 133 (citing *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). "If a contract as written can be given a clear and definite legal meaning, then it is not ambiguous as a matter of law." *Id.* (citing *Progressive Cnty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003)). The question of whether an ambiguity exists in a contract and the interpretation of an unambiguous contract are both questions of law subject to de novo review. *URI, Inc.*, 543 S.W.3d at 763*; see also Kachina Pipeline Co., Inc. v. Lillis*, 471 S.W.3d 445, 449 (Tex. 2015) (court reviews de novo the trial court's interpretation of an unambiguous contract).

## B. Interpreting CGL policies and their exclusions: the shifting burdens

As the Texas Supreme Court has recognized, a "CGL policy is a standard form developed by the Insurance Services Office, Inc. (ISO) and is used throughout the United States."[5] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 5–6 (Tex. 2007) (citing 2 *Jeffrey W.*

---

[5] "The ISO is the industry organization responsible for drafting the industry-wide standard forms used by insurers." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 6, n. 1 (Tex. 2007).

*Stempel, Stempel on Insurance Contracts* § 14.01 (3d ed. 2007)). Unlike a performance bond that guarantees a contractor's performance, a standard CGL policy is not intended to do so, as reflected in the exclusions. *Id.* at 9-10; *see also Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 38-39 (Tex. 2014) (recognizing that "CGL policies are not performance bonds"). In general, a CGL policy initially "grants the insured broad coverage for property damage . . . liability, which is then narrowed by exclusions that restrict and shape the coverage otherwise afforded." *Id.* at 10. And in turn, some exclusions contain exceptions, which, when applicable, narrow the scope of the exclusions and thereby reinstate or "add back" coverage the exclusion took away. *Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1289–90 (10th Cir. 2011), as amended on reh'g in part (Dec. 23, 2011); *see also JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015) (discussing structure of a CGL policy's exclusions and exceptions).

As with any insurance policy, an insured bears the initial burden of establishing coverage under the terms of a CGL policy. *See JAW The Pointe*, 460 S.W.3d at 603 (citing *Gilbert*, 327 S.W.3d at 124). "To avoid liability, the insurer then has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage." *Id.* (citing *Gilbert*, 327 S.W. 3d at 124). In general, any such exclusions or limitations on liability are "strictly construed against the insurer and in favor of the insured," and therefore, "[a]n intent to exclude coverage must be expressed in clear and unambiguous language." *Evanston*, 256 S.W. at 668 (citing *Nat'l Union Fire.*, 811 S.W.2d at 555). In turn, "[i]f the insurer proves that an exclusion applies, the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage." *JAW The Point*, 460 S.W.3d at 603.

In general, when interpreting an insurance contract, including a CGL policy, we "must adopt the construction of an exclusionary clause urged by the insured as long as that construction

is not unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Nat'l Union Fire.*, 811 S.W.2d at 555. Accordingly, we must adopt the Kunz Defendants' interpretation of the policy's exclusionary terms in favor of coverage unless we find "clear and unambiguous" policy language that requires us to construe the terms otherwise. *Id.*

## THE CGL POLICY COVERS THIS OCCURRENCE SUBJECT TO ANY APPLICABLE EXCLUSIONS

The CGL policy expressly states that United Fire will pay those sums the insured becomes legally obligated to pay because of property damage not "expected or intended from the standpoint of the insured." In turn, it defines "property damage" as "physical injury to tangible property." United Fire recognizes that the CGL policy provided coverage for the construction defects that caused the concrete system's failure, subject to the CGL policy exclusions, and we agree. In interpreting similar CGL policies, the Texas Supreme Court has held that the insurer may owe a duty to both defend and indemnify an insured who has been sued for causing property damage resulting from "unintended construction defects," i.e., poor workmanship on a construction project, subject to any applicable exclusions. *See Lamar Homes Inc.*, 242 S.W.3d at 4; *see also Grimes Const., Inc. v. Great Am. Lloyds Ins. Co.*, 248 S.W.3d 171, 171–72 (Tex. 2008) (per curiam) (allegations that property damage arose from homebuilder's defective workmanship was sufficient to trigger the insurer's duty to defend under a CGL policy). To hold otherwise would render the various exclusions to coverage, including the "your work" exclusion for poor workmanship in particular, meaningless or "illusory." *See Greystone Const.*, 661 F.3d at 1289–90 (given the structure of CGL policies, the "your work" exclusion for poor workmanship would be rendered illusory if damages caused by poor workmanship were not covered in the first place).

13

We therefore turn to whether any of the three CGL policy exclusions at issue on appeal would preclude coverage for the construction defects at issue such that United Fire would have no duty to indemnify JD Kunz for the underlying liability judgment.[6] *Id.*

### THE CONTRACTUAL-LIABILITY EXCLUSION

United Fire argues the contractual-liability exclusion precludes coverage because ExploreUSA's lawsuit and the jury's verdict were based solely on the claim that JD Kunz breached the Construction Contract.

The contractual-liability exclusion provides that this insurance coverage does not apply to:

"[P]roperty damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or
(2) Assumed in a contract or agreement that is an "insured contract . . . "

According to United Fire, JD Kunz was obligated to pay damages to ExploreUSA because of the obligations it contractually assumed. And according to United Fire, neither of the two exceptions to the exclusion applies: (1) JD Kunz's liability for damages in the underlying lawsuit was based on specific Construction Contract violations, not on the liability JD Kunz would have had in the absence of the contract; and (2) JD Kunz's liability was not based on an "insured contract," as the Construction Contract did not fit within that category. The parties agree that second exception does

---

[6] As we discuss in more detail below, the duty to defend and the duty to indemnify generally turn on different questions. Here, United Fire does not contend that it did not have a duty to defend JD Kunz in the lawsuit, only that it did not owe a duty to indemnify it for the damages awarded in the underlying lawsuit.

not apply here, as it does not fit within any of the various "insured contract" definitions in the policy.[7]

Accordingly, we address only: (1) whether JD Kunz was liable to ExploreUSA due to the contractual assumption of liability; and (2) if so, whether JD Kunz would have been liable in the absence of the Construction Contract.

## A. Applicable Law

For a contractual-liability exclusion in a CGL policy to apply, by its express terms, the insurer has the burden to show that its insured's liability for damages arose "by reason of the assumption of liability in a contract or agreement." *See Ewing*, 420 S.W. 3d at 34, 37; *Gilbert*, 327 S.W. 3d at 127. United Fire correctly points out, that while some earlier Texas cases had held that this exclusion *only* applied when the insured assumed the liability of a third party, the Texas Supreme Court has expressly rejected this view. *See Gilbert*, 327 S.W.3d at 124, 127. In *Gilbert*, the court recognized that although the contractual-liability exclusion does pertain to situations in which an insured assumed the liability of a third party, the exclusion is not so narrow as to *only* apply in that instance, otherwise the language would have simply said so. *Id.* Thus, the court held the exclusion could apply to cases in which the insured was sued for breach of contract and no third party was involved. *Id.* at 133.

Later, in *Ewing*, the court clarified that the contractual-liability exclusion does not apply in every breach-of-contract case.[8] Instead, the court clarified that an insured does not "contractually

---

[7] The CGL policy defines an "insured contract" as a contract for the lease of property; a "sidetrack" agreement; an easement or license agreement; an agreement to indemnify a municipality; an elevator maintenance agreement; and an agreement assuming tort liability on behalf of a third party for either bodily injury or property damages.

[8] As United Fire points out, the court in *Ewing* only resolved on the merits the issue of whether the insurer had a duty to defend its insured. However, the analysis it used in explaining when the contractual liability exclusion in a CGL policy is triggered is applicable to situations in which either the duty to defend or the duty to indemnify is at issue. In fact, the court relies heavily on *Gilbert*—a case involving the duty to indemnify—in explaining when the exclusion is

15

assume liability for damages within the meaning of the policy exclusion unless the liability for damages it contractually assumed was greater than the liability it would have had under general law." *Ewing*, 420 S.W.3d at 36 (citing *Gilbert*, 327 S. W. 3d at 127); *see also Siplast, Inc. v. Employers Mut. Cas. Co.*, 23 F.4th 486, 498 (5th Cir. 2022) (recognizing *Ewing's* interpretation of the contractual liability exclusion). In *Ewing*, the insured had agreed by contract to construct a tennis court in a "good and workmanlike manner," but the court noted that this express contractual duty "did not add anything to the obligation [the insured] has under general law to comply with the contract's terms and to exercise ordinary care in doing so." *Ewing*, 420 S.W.3d at 36; *see also Sipes v. Langford*, 911 S.W.2d 455, 457 (Tex. App.—Texarkana 1995) ("Implicit in every contract is a common-law duty to perform the terms of the contract with care, skill and reasonable experience."); *Crownover v. Mid-Continent Cas. Co.*, 772 F.3d 197, 209 (5th Cir. 2014) ("there is a general law duty to perform the terms of a contract with reasonable care"). Accordingly, the court expressly held that a "general contractor who agrees to perform its construction work in a good and workmanlike manner, without more, does not enlarge its duty to exercise ordinary care in fulfilling its contract [and] thus it does not assume liability for damages arising out of its defective work so as to trigger the Contractual Liability Exclusion." *Ewing*, 420 S.W.3d at 38. The relevant question is "not whether the obligation was contained in an express contractual provision, but whether that provision reflected an expansion of liability." *Crownover*, 772 F.3d at 207 (citing *Ewing*, 420 S.W.3d at 36); *see also Siplast, Inc.*, 23 F.4th at 498 (recognizing that under *Ewing*, the relevant question "is not whether the relevant duty is contractual; it is whether the contractual duty represents an *expansion* of liability").

---

triggered. *Ewing Const. Co., Inc. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 35–37 (Tex. 2014) (citing *Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126–127, 133-35 (Tex. 2010)). United Fire has not explained why *Ewing's* analysis is inapplicable to its duty to indemnify JD Kunz in this instance.

## B. Analysis

As a preliminary matter, United Fire insists that the *Ewing* analysis is based on the exception to the contractual-liability exclusion, and the Kunz Defendants therefore had the burden to establish that JD Kunz did not assume any obligations beyond its duty to perform its obligations under the Construction Contract in a good and workmanlike manner. We disagree. In *Ewing*, the court considered what was intended by the language of the exclusion itself, i.e., the "assumption of liability," which it concluded "means that the insured has assumed a liability for damages that exceeds the liability it would have under general law." *Ewing*, 420 S.W.3d at 37 (citing *Gilbert*, 327 S.W.3d at 127); *see also Crownover*, 772 F.3d at 207 (recognizing same). And the court expressly stated it was considering only whether the "contractual liability *exclusion*" was triggered; finding that it was not—given that the contractor in that case did not assume any liability beyond what the general law required—it did not need to address the question of whether any exception to the exclusion applied. *Ewing*, 420 S.W.3d at 31; *see also Crownover*, 772 F.3d at 210 (applying the *Ewing* analysis in determining the contractual-liability exclusion in a CGL policy did not apply, and it therefore did not need to address whether the insureds could "establish an exception to that exclusion").

Next, United Fire attempts to distinguish *Ewing*, contending that in *Ewing*, the insured was only sued for failing to perform its construction work in a "good and workmanlike manner," but here, ExploreUSA's suit against JD Kunz included several very specific contractual violations. United Fire points out that ExploreUSA specifically alleged JD Kunz failed to "comply with the diagram in the Construction Contract," failed to properly install the rebar at the correct level, failed to pour the concrete to the required thickness, and failed to "exercise quality control" over its subcontractors. And United Fire contends that the lawsuit was therefore premised on JD Kunz's

17

"assumption of liability" beyond its general duty to perform work in a good and workmanlike fashion. We disagree.

In *Ewing*, the court noted that in the underlying lawsuit, the defendant construction company was sued based on breaching several express contractual provisions, including, as here, the defendant's failure to complete construction in accordance with the contract plans and specifications, failing to exercise ordinary care in the preparation, management and execution of construction; failing to perform in a good and workmanlike manner; and failing to properly retain and supervise subcontractors. *Ewing*, 420 S.W. 3d at 33–34. And the court noted that the defendant thereby did no more than agree to perform the "contract's terms" in a good and workmanlike manner, and it therefore did not agree to assume any liability beyond the general law, rendering the contractual-liability exclusion inapplicable. *Ewing*, 420 S.W.3d at 36. In other words, the court held that a contractor does not assume any obligations beyond the general law by agreeing to adhere to the contract's express terms. Accordingly, as in *Ewing*, the only relevant question before us is whether JD Kunz agreed to assume any obligations *beyond* agreeing to comply with the terms of the Construction Contract itself. *Id.* And thus, the fact that ExploreUSA listed express violations of the Construction Contract in its pleading in the underlying lawsuit is irrelevant to the question of whether JD Kunz assumed any liability beyond agreeing to fulfill those very same terms in a good and workmanlike manner. *Id.; see also Siplast, Inc.*, 23 F.4th at 498 (although plaintiffs in the underlying lawsuit alleged the contractor violated an express term of its construction contract, which caused damage to the plaintiff's property, the allegation did not open the contractor "up to additional liability beyond that found at law"); *AIX Specialty Ins. Co. v. Universal Cas. Co.*, No. CV H-12-507, 2014 WL 12599325, at *13 (S.D. Tex. July 30, 2014) (although plaintiff alleged a breach of an express provision in a construction contract, under *Ewing*, the contractual-liability

18

exclusion in the insured's CGL policy was not triggered, as the contractor did not assume any liabilities beyond performing the terms of the contract in a good and workmanlike fashion); *Crownover*, 772 F.3d at 207–08 (applying *Ewing* in concluding that the fact that an arbitrator's award was based on the breach of an express contractual duty rather than an implied general-law duty is "inconsequential" in finding that the contractual-liability exclusion did not apply).

United Fire, however, argues that through several Construction Contract provisions, JD Kunz agreed to assume liability beyond its obligations under the general law, pointing out that JD Kunz agreed to adhere to a particular project schedule; to refrain from assigning the contract; to properly request approval to hire subcontractors to perform its work; and to require its subcontractors to maintain insurance. But United Fire does not explain how the damages Explore USA suffered were caused by JD Kunz's assumption of these obligations. As set forth above, to trigger the contractual-liability exclusion, by its express terms, the insurer has the burden to show that its liability for damages arose "*by reason of the assumption of liability in a contract or agreement*" (emphasis added). *See Ewing*, 420 S.W. 3d at 34, 37; *see also Gilbert*, 327 S.W. 3d at 127. Here the jury's verdict—and the underlying judgment awarding damages for which JD Kunz is seeking indemnification under the CGL policy—was based solely on the cost to repair and replace the concrete system that JD Kunz agreed to install. In other words, JD Kunz was not obligated to pay the underlying judgment to Explore USA for any reason other than its failure to ensure that the concrete system was properly installed.

Accordingly, the record does not support United Fire's contention that JD Kunz assumed any liability beyond its obligation to perform the terms of the Construction Contract in a good and workmanlike manner such that the contractual-liability exclusion would apply. And because we

find JD Kunz did not assume any contractual liability within the meaning of the policy exclusion, we need not address whether the exception to the exclusion applies.

United Fire's Issues Four, Five and Six are overruled.

<strong>THE YOUR-PRODUCT EXCLUSION</strong>

Next, United Fire contends coverage is precluded by the your-product exclusion, a "business risk" exclusion that generally excludes coverage for the insured's manufacture, sale, or installation of defective or substandard products. *See generally Zurich Am. Ins.*, 268 S.W.3d at 500 (recognizing that the "business risk" exclusions in a CGL policy are "intended to provide coverage for tort liability, not for the contractual liability of the insured for loss which takes place due to the fact that the product or completed work was not that for which the other party had bargained"); *Dallas Nat'l Ins. Co. v. Calitex Corp.*, 458 S.W.3d 210, 216 (Tex. App.—Dallas 2015, no pet.) (CGL exclusions, known as "business risk" exclusions, "preclude[] coverage for the repair or replacement of defective workmanship and substandard goods and services").

The your-product exclusion in the CGL policy provides that this insurance does not apply to: "[p]roperty damage to your product arising out of it or any part of it." "Your product" is defined as: "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [the insured]," as well as "[c]ontainers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products." "Your product" also includes any "[w]arranties or representations made at any time with respect to the fitness, quality, durability, performance or use of your product."

United Fire argues there are two reasons why the your-product exclusion applies to preclude coverage. First, the failed concrete system itself and its "component parts" can be considered JD Kunz's "product." And second, JD Kunz supplied and installed the materials that

20

were used in the failed system, and ExploreUSA's lawsuit was based in part on the "defective" nature of those materials. We find neither argument availing.

**A. The concrete system and its component parts were not JD Kunz's "product"**

We first consider United Fire's argument that the failed concrete system itself, its component parts, or both, can be considered JD Kunz's "product" for purposes of the your-product exclusion. As the Kunz Defendants point out, the Austin Court of Appeals rejected a similar argument in which an insurer alleged that a building its insured had constructed could be considered a "product" for purposes of applying the your-product exclusion in a CGL policy. *See CU Lloyd's of Texas v Main Street Homes, Inc.*, 79 S.W.3d 687, 690 (Tex. App.—Austin 2002, no pet.). In that case, the parties' CGL policy defined "your product" to mean "goods or products . . . manufactured, sold, distributed, or disposed of . . . [.]" *Id*. The court concluded that this definition did not apply to the construction of a building or its component parts, recognizing that in "ordinary language buildings are constructed or erected, not manufactured." *Id.* (citing *Mid-United Contractors, Inc. v. Providence Lloyds Ins. Co.*, 754 S.W.2d 824, 826 (Tex. App.—Fort Worth 1988) ("neither the building nor its component parts were the appellant's product" for purposes of the "your product" exclusion in a CGL policy)); *see also Amerisure Mut. Ins. Co. v. McMillin Tex. Homes, LLC*, No. SA-20-CV-01332-XR, 2022 WL 686727, at *9-10 (W.D. Tex. Mar. 8, 2022) (applying Texas law in rejecting insurer's argument that a lawsuit against homebuilders for construction defects fell under the your-product exclusion to its CGL policy, as the homes could not be considered a "product" within the meaning of the policy); *AIX Specialty Ins.*, 2012 WL 6862489, at *12 (recognizing that the your-product exclusion in a CGL policy did not apply to a lawsuit relating to construction defects in a condominium complex as the buildings in the complex could not be considered a "product").

21

United Fire seeks to distinguish the above holdings, contending that, unlike a building or other similar structure that may not be considered a "product," the concrete system JD Kunz constructed—which was in effect a parking lot—can be considered a "product" for purposes of the your-product exclusion. United Fire, however, cites no cases for this proposition.[9] Moreover, we agree with the Kunz Defendants that the concrete system is more analogous to a building or other structure that is *constructed* than it is to "goods or services" that are manufactured, sold, handled, or distributed to third parties, for purposes of applying the your-product exclusion.

We find it significant that the CGL policy, as is standard in the industry, provides that the your-product exclusion does not apply to "real property." *See* 9A Couch on Ins. § 129:20 (recognizing that the "standard definition of your product expressly provides that real property is not included within the purview of this phrase"). Accordingly, "[t]he work performed by contractors on dwellings, buildings, *structures, and any other form of realty* is therefore not considered to be the product of the insured (emphasis added)." *Id.*; *see also Prisco Serena Sturm Architects, Ltd. v. Liberty Mut. Ins. Co.*, 126 F.3d 886, 892 (7th Cir. 1997) (recognizing that a building is "real property" and therefore construction defects arising from the building's construction do not fall within the your-product exclusion in a CGL policy); 4 LAW AND PRAC. OF INS. COVERAGE LITIG. § 45:13 (recognizing that the "better reasoned cases find that the [your product] exclusion does not apply to a completed structure"). And in turn, we conclude that a parking lot must, by its very nature, be considered a form of real property. *See, e.g., Reynolds v.*

---

[9] In support of its argument that we should consider the concrete system a "product," United Fire relies solely on *Mt. Hawley Ins. Co. v. Steve Roberts Custom Builders, Inc.*, 215 F.Supp.2d 783, 792 (E.D. Tex. 2002) in which a contractor was responsible for installing a driveway at an individual's home but incorrectly placed it in an area that encroached on the neighbor's property. The homeowners thereafter sued the contractor for damages, and the trial court held that the insurer had a duty to defend the contractor under the CGL policy finding that no exclusion precluded coverage for that duty. *Id.* at 794. Significantly, the court in that case did not discuss the duty to indemnify, nor did it discuss the your-product exclusion or make any pronouncements as to whether the driveway could be considered a "product" under a CGL policy. We therefore do not find the holding in this case relevant to our analysis.

*State*, 390 S.W.2d 493, 495 (Tex. App.—Texarkana 1965, no writ) (recognizing that a parking lot is an improvement on land that is subject to real property taxes); *Samuel v. KTVU P'ship*, No. 08-02-00010-CV, 2003 WL 22405384, at *2 (Tex. App.—El Paso Oct. 22, 2003, no pet.) (mem. op.) (not designated for publication) (recognizing that a parking lot is subject to real estate property taxes); *Torres v. Chauncey Mansell & Mueller Supply Co., Inc.*, 518 S.W.3d 481, 491 (Tex. App.—Amarillo 2017, pet. denied) (recognizing that a parking lot is considered an improvement to real property for purposes of Chapter 95 of the Texas Code of Civil Procedure, which provides that a property owner is generally not liable to a contractor who constructs an improvement to real property for damages arising from the failure to provide a safe workplace); *Majeski v. Estate of Majeski*, 163 S.W.3d 102, 105, 108 (Tex. App.—Austin 2005, no pet.) (treating parking lot adjacent to property as part of individual's homestead); *see also* TEX. PROP. CODE ANN. § 53.001(2)(A) (listing a parking structure as an "improvement" for purposes of obtaining a mechanics, contractor's or materialman's lien).

United Fire also points out that some courts have held that the your-product exclusion may apply when a defendant is sued for improperly installing its own product in a building, which thereby results in damage, reasoning that the installation of the insured's own product into a building is more analogous to selling or distributing a product than it is to constructing the building itself. *See, e.g., Bldg. Specialties, Inc. v. Liberty Mut. Fire Ins. Co.*, 712 F. Supp. 2d 628, 646–47 (S.D. Tex. 2010). For example, in *Bldg. Specialties, Inc.*, the court held that the insulation ducts an insured had installed in an HVAC system in a building—which were improperly installed— were "more similar to components that are manufactured and later installed into a house or building" than they were to the construction of the building itself, rendering the your-product exclusion applicable. *Id.* at 647 (citing *Valmont Energy Steel, Inc. v. Commercial Union Ins. Co.*,

23

359 F.3d 770, 776 (5th Cir. 2004) (holding that steel flanges made for use in the construction of microwave towers were the insured's "product," triggering the your-product exclusion in the parties' CGL policy); *Dal-Tile Corp. v. Zurich Am. Ins. Co.*, No. Civ. A. 3:02–CV–0751–K, 2004 WL 414900, at *5 (N.D. Tex. Feb. 2, 2004) (holding that floor tiles and flooring materials used in the construction of a shopping mall were the insured's product and that the your-product exclusion precluded coverage for damages for their repair or replacement)).

As set forth above, however, JD Kunz's role was not limited to simply installing a product into the concrete system. Instead, JD Kunz was responsible for the entire construction project. Accordingly, its role was more analogous to constructing a building or other structure than to simply installing a component part into the concrete system.

More importantly, as the Kunz Defendants point out, there is nothing in the record to suggest that JD Kunz manufactured, supplied, or installed the two component parts at issue in the concrete system's failure, i.e., the rebar and the concrete, such that they could be considered JD Kunz's "product." To the contrary, as we discuss in more detail below, the uncontradicted evidence in the record before us demonstrates that both products were supplied and separately installed by JD Kunz's subcontractors. [10] Accordingly, we conclude that the concrete system JD Kunz constructed is not a "product" within the meaning of the your-product exclusion.

---

[10] If we were to hold, as United Fire would have us do, that the improper installation of non-defective products—which were not manufactured, supplied or even installed by the general contractor—triggered the your-product exclusion, there would be no functional distinction between the your-work exclusion for poor workmanship and the your-product exclusion; this would render the your-work exclusion meaningless. We will not construe the policy in a manner that renders a provision meaningless. *See generally Gilbert Tex. Constr., L.P. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 126 (Tex. 2010) (under general contract principles, we must "give effect to all [insurance policy] provisions so that none will be meaningless").

**B. The materials used in the project were not defective**

United Fire also contends that the your-product exclusion should apply to preclude coverage because ExploreUSA's lawsuit was based in part on allegations that the materials used in constructing the concrete system were defective.

The primary intent of the your-product exclusion is to "preclude coverage for economic loss claims based on product defects." *See, e.g., Zurich Am. Ins.*, 268 S.W.3d at 500. Therefore, as various courts have recognized, when an insured is sued for installing a faulty product into a building, which is the cause of the plaintiff's damages, the your-product exclusion will preclude coverage. *See, e.g., Lee-Var, Inc. v. AIG Specialty Ins. Co.*, No. 4:18-CV-1516, 2019 WL 13109759, at *8 (S.D. Tex. Aug. 12, 2019) (memo) (the installation of defective water tanks into a building came under the your-product exclusion); *Lexington Ins. Co. v. Nat'l Oilwell NOV, Inc.*, 355 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (where a "defective component" in a water heater caused damage to the water heaters themselves and the buildings where the heaters were installed, the your-product exclusion applied); *Fritz Indus., Inc. v. Wausau Underwriters Ins. Co.*, No. Civ. A. 3:02–CV–894–L, 2004 WL 396258, at *5 (N.D. Tex. Jan. 26, 2004) (holding that coverage for damages incurred to replace the insured's allegedly defective tile installed in a racetrack was precluded by the your-product exclusion).

Here, while United Fire correctly points out that JD Kunz agreed to furnish all necessary "labor and materials" for the project—including the rebar and the concrete used in the concrete system's construction—ExploreUSA did not base its underlying lawsuit on any claim that the system failed because those component parts were defective. To the contrary, as set forth above, ExploreUSA's sole theory of liability in the underlying litigation was based on two claims: (1) that the rebar was not placed at the proper depth; and (2) that the concrete was not poured at the required

25

six-inch thickness. Moreover, in support of their summary judgment motions, the Kunz Defendants produced excerpts from the testimony of various witnesses, including two expert witnesses who investigated the cause of the system's failure. These witnesses expressly testified at the underlying trial that, based on their testing, there was nothing wrong with the concrete or the rebar used in the project, and in their opinions, the system damage resulted solely from the improper installation of the rebar and the fact that the concrete was poured too thin.[11] United Fire produced no countervailing evidence suggesting that the system failed as the result of any defects in the materials used in the project.

We therefore conclude that United Fire did not meet its burden of establishing that the your-product exclusion in the CGL policy precluded coverage.

United Fire's Issue Seven is overruled.

### THE YOUR-WORK EXCLUSION AND THE SUBCONTRACTOR EXCEPTION

Next, United Fire contends coverage is precluded by another "business risk" exclusion—the your-work exclusion, which generally excludes coverage for the insured's poor workmanship. The your-work exclusion excludes "[p]roperty damage to your work arising out of it or any part of it and included in the products-completed operations hazard." The Kunz Defendants appear to acknowledge that the your-work exclusion applies to its allegedly deficient performance in

---

[11] In support of their summary judgment motions, the Kunz Defendants provided an excerpt from the trial testimony of Donald Illingworth, a structural engineer, who testified that the testing he performed on the failed concrete structure caused him to conclude that the strength of the concrete was adequate but that it was poured "way too thin." He further opined that this, along with the improper installation of the rebar, caused the system's failure. In addition, they provided an excerpt from the trial testimony of Mickey Barrett, a civil engineer, who testified that he also believed the system's failure was caused by the concrete having been poured too thin and by the rebar having been improperly placed. They also produced an excerpt from the trial testimony of Ron Vernon, whose company was hired to provide an estimate of the cost of repairing the failed system. Vernon testified that he believed the primary reason for the failure stemmed from the concrete having been poured too thin in places. And finally, they presented an excerpt from the deposition testimony of John Kunz, the owner of JD Kunz Construction, who testified that he also believed the system failed because the concrete was poured too thin in some areas, and he had no reason to believe the concrete itself was defective.

26

constructing the concrete system. And we agree that it does, as ExploreUSA's underlying lawsuit against JD Kunz was expressly based on property damage resulting from its deficient work performance in constructing the system.

However, the your-work exclusion contains an exception: "[t]his exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." (the subcontractor exception). Accordingly, we must determine whether the Kunz Defendants met their burden of demonstrating that the subcontractor exception to the your-work exclusion applies.

## A. Applicable law

CGL policies will often exclude faulty workmanship "because that is the CGL's structure." *Lamar Homes*, 242 S.W.3d at 10 (citing 2 *Stempel on Insurance Contracts* § 14.01). However, the Texas Supreme Court has recognized a "notable exception" in most standard CGL policies "for work performed for the insured by a subcontractor." *Id*. at 11. As the court observed, in the past, standard CGL policies did not typically include such an exception, and instead, CGL policies routinely excluded property damage caused in a construction project for poor workmanship as a general matter. *Id.* at 12. However, in 1986, the ISO inserted the subcontractor exception to the your-work exclusion as a broad-form endorsement in the standard CGL policy. *Id.* (citing *See Am. Family Mut. Ins. Co. v. Am. Girl, Inc*., 268 Wis. 2d 16, 673 N.W.2d 65, 82 (2004)). "This resulted both because of the demands of the policyholder community (which wanted this sort of coverage) and the view of insurers that the CGL was a more attractive product that could be better sold if it contained this coverage." *Greystone Const.*, 661 F.3d at 1288 (citing 2 *Stempel on Insurance Contracts* § 14.13[D]). By adding the subcontractor exception, the "insurance industry specifically contemplated coverage for property damage caused by a subcontractor's defective performance,"

27

thereby reinstating the coverage under a CGL policy for such damage the your-work exclusion would otherwise negate. *Lamar Homes*, 242 S.W.3d at 11, 14 (citing 2 *Stempel on Insurance Contracts* § 14[13][D] at 14–224.8–14–224.9); *see also Feaster v. Mid-Continent Cas. Co.*, No. 4:13-CV-3220, 2015 WL 164041, at *5–6 (S.D. Tex. Jan. 13, 2015), *aff'd*, 620 Fed. Appx. 300 (5th Cir. 2015) (discussing the operation of the subcontractor exception). Thus, the "insurance industry essentially agreed to cover a huge portion of faulty workmanship claims, particularly those arising out of home building or other construction."[12] *Lamar Homes*, 242 S.W.3d at 12, n. 12 (quoting, *Stempel on Insurance Contracts* § 14 [13][D] at 14–224.9).

### B. United Fire did not waive its right to address the subcontractor exception

Before addressing the merits of whether the subcontractor exception applies, we address the Kunz Defendants' argument that United Fire waived its right to dispute the exception's applicability because it addressed the issue for the first time in its reply brief.

As the Kunz Defendants correctly point out, although they raised the subcontractor exception in their summary judgment pleadings and provided evidence of using subcontractors on the construction project, United Fire failed to address the subcontractor exception in the trial court and presented no countervailing evidence on the issue. United Fire again failed to address the subcontractor exception in its appellant's brief and instead only addressed the exception for the first time in its reply brief—arguing against its applicability—in response to the Kunz Defendants' arguments in their appellees' briefs that the exception applied.

---

[12] We note that the ISO subsequently "issued an endorsement that may be included in the CGL to eliminate the subcontractor exception to the your-work exclusion." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007); *see also Greystone Const., Inc. v. Nat'l Fire & Marine Ins. Co.*, 661 F.3d 1272, 1288 (10th Cir. 2011), as amended on reh'g in part (Dec. 23, 2011) (recognizing insurer's option to eliminate the subcontractor exception). However, United Fire did not utilize this endorsement, and instead, as set forth above, its CGL policy included the subcontractor exception to the your-work exclusion.

The Kunz Defendants contend United Fire should be prohibited from addressing the subcontractor exception for the first time in its reply brief, and we should conclude that the subcontractor exception applies to reinstate coverage without considering United Fire's arguments against its application. In support of their argument, the Kunz Defendants correctly point out that in general, "[a]n issue raised for the first time in a reply brief is waived and need not be considered by an appeals court." *See Reyes v. Burrus*, 411 S.W.3d 921, 923 n.2 (Tex. App.—El Paso 2013, pet. denied). However, as United Fire counters, Texas Rule of Civil Procedure 38.3 allows an appellant to respond in its reply brief to any issues appellee raises in its brief. TEX. R. APP. P. 38.3 ("The appellant may file a reply brief addressing any matter in the appellee's brief."); *Interest of D.Z.*, 583 S.W.3d 284 (Tex. App.—Houston [14th Dist.] 2019, no pet.) (recognizing that appellant was entitled to respond to arguments made by the appellee in her responsive brief). Accordingly, United Fire was permitted to respond to the Kunz Defendants' arguments regarding the applicability of the subcontractor exception in its reply brief.

More importantly, we conclude that United Fire was not required to address the subcontractor exception in the summary judgment proceedings in the trial court to preserve its right to argue on appeal that the exception did not apply. *See generally* TEX. R. APP. P. 33.1 (as a prerequisite to presenting a complaint for appellate review, the record must typically show that "the complaint was made to the trial court by a timely request, objection, or motion"). But here, in the trial court, the Kunz Defendants bore the burden of establishing that the subcontractor exception applied. *See JAW The Point.*, 460 S.W.3d at 603 (if the insurer proves that an exclusion applies, "the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage"). Therefore, unless the Kunz Defendants met that burden, United Fire was not required to come forward with any evidence (or arguments) to rebut the Kunz

29

Defendants' claim that the exception applied. *See Chavez*, 520 S.W.3d at 899–900 (where movant fails to meet its initial burden of establishing its entitlement to summary judgment, the nonmovant need not respond or present any evidence at all). And in its reply brief, United Fire contends that the Kunz Defendants did not meet that burden—as they failed to conclusively establish that the concrete system's failure was caused solely by the work performed by their subcontractors. We therefore conclude that United Fire may address the issue of whether the Kunz Defendants met their burden of establishing the applicability of the subcontractor exception for the first time on appeal and for the first time in its reply brief.

### C. The parties were not required to litigate the issue of insurance coverage or the subcontractor exception in the underlying liability lawsuit

We next address United Fire's contention that the Kunz Defendants failed to meet their burden of establishing that the subcontractor exception applies because the issue of the subcontractor's performance was not expressly litigated in the underlying liability lawsuit.

In this regard, United Fire contends that ExploreUSA's underlying lawsuit was based solely on JD Kunz's allegedly defective performance in constructing the concrete system, and neither ExploreUSA nor JD Kunz can now "turn around . . . and blame the subcontractors when it comes to coverage." This is an inaccurate characterization of ExploreUSA's lawsuit. ExploreUSA's petition alleged that the physical damage and deterioration of the system was the "result of the incorrect or inadequate performance of work by JD Kunz and/or its *subcontractors* (emphasis added)." In addition, ExploreUSA also alleged that JD Kunz breached the Construction Contract by failing "to exercise quality control during the performance of [its] work on the Project," which United Fire recognizes goes directly to the issue of whether JD Kunz breached the contract by failing to properly supervise the work of its subcontractors. And, the jury could have

concluded that JD Kunz's failure to supervise its subcontractors was the basis of its breach of the Construction Contract regardless of who performed the actual work on the project. But nothing in the underlying lawsuit precludes the Kunz Defendants from asserting the subcontractor exception applies to reinstate coverage under the language of the CGL policy.

United Fire also contends that the Kunz Defendants cannot or should not now be heard to raise the subcontractor exception because JD Kunz did not seek to hold the subcontractors responsible for the damage in the underlying litigation—such as by filing a third-party complaint against them—and because JD Kunz failed to obtain a jury answer on the question of who performed the deficient work that led to the concrete system's failure. We disagree.

In part, United Fire's argument appears to be based on the language that various courts have used when distinguishing between an insurer's duty to defend its insured in a lawsuit and the insurer's duty to indemnify the insured for any damages awarded in the underlying lawsuit. *See D.R. Horton-Tex., Ltd. v. Markel Intern. Ins. Co., Ltd.*, 300 S.W.3d 740, 743 (Tex. 2009) (recognizing that the duty to defend and the duty to indemnify are "distinct and separate" from each other). In general, the duty to defend initially arises from a review of the four corners of the policy itself and the four corners of the plaintiff's pleadings in the underlying lawsuit (i.e., the "eight-corners doctrine") and is based on whether the allegations in the pleadings support the possibility that there may be coverage under the policy.[13] *Id*. at 744. In other words, the duty to defend "depends not on what the facts are or what might finally be determined to be the facts" but "only on what the facts are alleged to be." *Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political*

---

[13] Although not at issue here, there may be situations in which it is necessary for the parties to present "extrinsic evidence" to determine an insurer's duty to defend when the pleadings do not make it clear that the duty has been triggered. *See Pharr-San Juan-Alamo Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 473-77 (Tex. 2022).

*Subdivisions Prop./Cas. Joint Self Ins. Fund*, 642 S.W.3d 466, 471 (Tex. 2022) (citing *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 25 (Tex. 1965)).

On the other hand, the duty to indemnify is not based on the pleadings, but on "the facts that establish liability." *See Archon Investments, Inc. v. Great Am. Lloyds Ins. Co.*, 174 S.W.3d 334, 339 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) (citing *Great Am. Ins. Co. v. Calli Homes*, 236 F. Supp.2d 693, 697 (S.D. Tex. 2002)); *see also Gomez v. Allstate Tex. Lloyds Ins. Co.*, 241 S.W.3d 196, 205 (Tex. App.—Fort Worth 2007, no pet.) (recognizing that unlike the duty to defend, "the duty to indemnify is not based on the eight corners of the policy and the underlying petition, but on the actual facts that form the underlying claim") (citing *Alliance Ins. Co. v. Frito-Lay, Inc.*, 788 S.W.2d 152, 154 (Tex. App.—Dallas 1990, writ dism'd)). United Fire correctly points out that, in general, the duty to indemnify cannot be determined until after the underlying litigation has concluded and the insured's liability has been adjudicated, in part because the issue of indemnification "may turn on facts actually proven in the underlying lawsuit." *See D.R. Horton*, 300 S.W. 3d at 745; *see also Gilbert*, 327 S.W.3d at 134; *Colony Ins. Co. v. Peachtree Const., Ltd.*, 647 F.3d 248, 253 (5th Cir. 2011) (applying Texas law in recognizing that "an insurer's duty to indemnify generally cannot be ascertained until the completion of litigation, when liability is established, if at all"); *In re Farmers Tex. Cnty. Mut. Ins. Co.*, 621 S.W.3d 261, 270–71 (Tex. 2021) (recognizing that, in general, the duty to indemnify "arises only after an insured's legal responsibility for covered damages has been established by judgment or settlement"). And in turn, many cases have stated that the "facts actually established in the underlying suit control the duty to indemnify." *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 279 S.W.3d 650, 656 (Tex. 2009) (quoting *GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church*, 197 S.W.3d 305, 310 (Tex. 2006)); *see also Hartrick v. Great Am. Lloyds Ins. Co.*, 62 S.W.3d 270, 275 (Tex. App.—

Houston [1st Dist.] 2001, no pet.) ("[T]he duty to indemnify arises from proven, adjudicated facts.").

However, the Texas Supreme Court has expressly recognized that the facts necessary to establish coverage "are not required to be proven in an underlying trial against the insured and are often proven in coverage litigation." *See In re Farmers*, 621 S.W.3d at 276 (citing *D.R. Horton*, 300 S.W.3d at 744). Thus, there may be occasions, such as when the parties settle the plaintiff's liability claim without a trial, in which it will be necessary for the parties to submit new or additional evidence in the coverage litigation—either in a coverage trial, or as here, in a summary judgment proceeding—to determine the question of the insurer's duty to indemnify. *Id.*; *see also D.R. Horton*, 300 S.W.3d at 744 (citing *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp.*, 532 F.3d 398, 404 (5th Cir. 2008) (recognizing that a party may present evidence at a coverage trial on the issue of an insured's duty to indemnify, where the "facts necessary to determine coverage . . . were not adjudicated in the underlying case")). Moreover, United Fire has not cited any authority, nor are we aware of any, that would require an insured to resolve the issue of insurance coverage with any finality in the underlying liability litigation—such as by seeking a jury verdict or answer on the issue. To the contrary, as the Fifth Circuit has recognized, "[t]he underlying case often does not resolve all the factual issues necessary to determine coverage because issues relevant to the question of coverage can be irrelevant to the question of the insured's liability." *Puget Plastics Corp.*, 532 F.3d at 404; *see also Swicegood ex rel. Swicegood v. Med. Protective Co.*, No. CIV.A.3:95-CV-0335-D, 2003 WL 22234928, at *14 (N.D. Tex. Sept. 19, 2003) (construing Texas law to allow "new evidence" at a "coverage trial when the proof is necessary to resolve a controlling coverage question that was not conclusively decided in the indemnity suit," such as when an insurer raises an exclusion issue to avoid coverage).

As such, we conclude that JD Kunz was not required to establish the applicability of the subcontractor exception during the underlying liability litigation, nor was it required to obtain a jury ruling on the issue in order to raise the exception in the coverage litigation. Accordingly, the only remaining issue is whether the trial court correctly found that JD Kunz met its burden of establishing the applicability of the exception, as a matter of law, based on the evidence the parties submitted in support of their summary judgment motions.[14]

### D. The undisputed evidence established that the subcontractors performed the faulty work that led to the underlying judgment

United Fire contends the Kunz Defendants failed to meet their burden of establishing that the subcontractor exception applies, arguing that the Kunz Defendants did not conclusively establish that the subcontractors were "solely" responsible for the conditions that caused the concrete system's failure, i.e., for pouring the concrete too thin and for failing to properly position the rebar. While United Fire expressly "admits there is some evidence that subcontractors did *some* work on the construction project," it contends there was "conflicting evidence on the issue of who did what work" and who was ultimately responsible for performing the defective work. We find no such conflict in the evidence.

In support of their motion for summary judgment, the Kunz Defendants submitted uncontradicted evidence establishing that the subcontractors performed all of the work leading to the concrete system's failure. In particular, the Kunz Defendants attached excerpts from the deposition of John Kunz, the owner of JD Kunz, as well as deposition and trial testimony of Joshua

---

[14] As discussed below, in support of their summary judgment motions, the Kunz Defendants produced evidence outside the record of the underlying trial, including deposition testimony from two of its witnesses, to establish that its subcontractors performed all of the work that caused the damages Explore USA suffered and for which the jury awarded it damages. United Fire did not object to the admission of the deposition testimony in the summary judgment proceedings.

Luke Roach, the project manager. Both Kunz and Roach testified that they used multiple subcontractors on the project at virtually all phases of the construction, beginning with using a subcontractor for the first step of the project to install the subgrade on the surface of the construction site. Roach explained that the next step in the process involved the placement of wooden form boards on the subgrade to lay out the paving sections, which boards were intended to be placed at a height of six inches—the same thickness for which the concrete was to be poured. Roach testified that he hired a second subcontractor, as well as several other independent contractors, to lay them on the subgrade. Roach also testified that this same subcontractor was responsible for the bricking process, which involves placing bricks on the subgrade to ensure that the rebar would be installed at the correct level, and for laying out and tying the rebar in place.

Both Kunz and Roach further testified that they hired yet a third subcontractor—a "place and finish" subcontractor—responsible for pouring the concrete in the last step of the process. They both testified that when pouring the concrete, the place-and-finish subcontractor used a laser screed, which allows the operator to enter data into a computer program to set the grade of the pour, which in turn is transmitted to a laser that works "to the grades that were entered into it." Roach testified that the place-and-finish subcontractor owned the laser screed, and its employees were responsible for entering the data into the laser screed and operating it as the concrete was being poured.[15] Roach further testified that this subcontractor's employees were responsible for controlling how much concrete was poured and for spreading out the concrete with trowel machines. According to Roach, although he was present when the concrete was poured, he did not

---

[15] One of ExploreUSA's experts testified at trial that a laser screed is "no better than the information you plug into it. It's kind of like a computer: Garbage in, garbage out."

physically touch the concrete and was not responsible for checking the thickness of the concrete after it was poured.

United Fire presented no countervailing evidence of its own on the issue of who was responsible for performing these portions of the work on the project. However, in its reply brief, United Fire points to various passages from the testimony excerpts that JD Kunz supplied, which it contends supports a finding that JD Kunz performed at least some of the work that led to the concrete failure. We find United Fire's arguments unavailing.

First, citing to John Kunz's deposition testimony, United Fire argues the record contains evidence that JD Kunz did the form setting and saw cutting on the project. However, the record cites to which United Fire refers us is a passage in which Kunz testified that when working locally, his company typically does its own form setting and saw cutting. But Kunz did not testify that his company did its own form setting or saw cutting on the project in question, and in fact, Roach expressly testified that they used a subcontractor for both. More importantly, United Fire does not point to any evidence that the form setting and saw cutting in any way contributed to the concrete system's failure, nor do we see any such evidence in the record.

Second, United Fire contends that the record contains testimony that JD Kunz did the concrete pour and the steel reinforcement, i.e., tying the rebar in place. The record reference to which United Fire cites, however, is to Roach's testimony that he was "responsible" for the steel reinforcement during the concrete pour, but again, Roach made it abundantly clear that the subcontractors—and only the subcontractors—tied (and laid) the rebar and poured the concrete, and Roach's only role was to be present to supervise their work.

Third, United Fire finds significant Kunz's testimony that he did not know if it was his employees or the subcontractors who were responsible for placing the bricks on the subgrade to

36

raise the rebar off the ground to the proper height. However, Kunz testified that Roach would know who was responsible for laying the bricks, and as set forth above, Roach testified that a subcontractor was responsible for the bricking.

Fourth and finally, United Fire finds significant Roach's acknowledgment that he was responsible for supervising the subcontractors' work and was on site during the concrete pour for quality control purposes. And United Fire argues that, at least in part, ExploreUSA's damages were caused by JD Kunz's failure to properly supervise the subcontractors' work and/or its failure to maintain quality control on the project. United Fire contends that this breach was an independent violation of the contract—separate and distinct from any of the subcontractors' allegedly deficient performance.[16]

We find this argument irrelevant to the question of who *performed* the actual work that led to the damages ExploreUSA incurred. While JD Kunz's alleged failure to properly supervise its subcontractors or otherwise ensure quality control was clearly relevant to the question of its liability to ExploreUSA, United Fire has not explained its relevance to the subcontractor exception to the your-work exclusion. As set forth above, the subcontractor exception was added to standard CGL policies in recognition of the growing use of subcontractors in construction projects and expressly states that it reinstates coverage when the "damaged work or the work out of which the

---

[16] United Fire also lists several other breaches ExploreUSA alleged in its petition that United Fire contends were independent of the work performed by the subcontractors, including JD Kunz's alleged failure to provide all labor for the subsurface preparation; its failure to properly request written approval to hire subcontractors to perform its work on the project; its failure to procure insurance; and its failure to hold its subcontractors to insurance requirements in the Construction Contract. United Fire, however, does not explain how any of these alleged contractual violations— even if true—caused the damages Explore USA suffered for which JD Kunz was seeking indemnification, i.e., for the cost to repair and replace the concrete system. And, as set forth above, the very language of the subcontractor exception in the CGL policy states that the exception applies when the "damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." Accordingly, we find no relevance to the other alleged breaches under the contract United Fire raises in determining whether the subcontractor exception applies according to the CGL policy.

damage arises was *performed* on your behalf by a subcontractor." *See Lamar Homes*, 242 S.W.3d at 11, 14 (recognizing that by adding in the subcontractor exception, the "insurance industry specifically contemplated coverage for property damage caused by a subcontractor's defective performance"). In other words, the entire focus of the subcontractor exception is on who *performed* the work, not on who supervised it. And as set forth above, when, as here, the language of a policy is unambiguous, we must construe it as written based on its plain language and presume that the parties intended what the words of the policy say. *See Gilbert*, 327 S.W.3d at 126 (to ascertain the parties' intent, a court must look to the language of the insurance policy itself and presume that the parties intended "what the words of their contract say"). Accordingly, we conclude that the only relevant issue in determining the applicability of the subcontractor exception is whether the insured demonstrated that subcontractors actually performed the defective work. JD Kunz's undisputed summary judgment evidence demonstrated that they did.

Accordingly, we conclude that the Kunz Defendants met their burden of establishing that the subcontractor exception to the your-work exclusion reinstated coverage for the damages ExploreUSA incurred as the result of the concrete system's failure. United Fire's Issues Eight and Nine overruled.

In sum, because we find that none of the CGL policy exclusions preclude coverage, we conclude that the trial court did not err in finding United Fire owed JD Kunz a duty to indemnify, in granting the Kunz Defendants' motion for summary judgment, and in denying United Fire's cross-motion. Accordingly, United Fires' Issues One, Two and Three are also overruled.

## POST-JUDGMENT INTEREST ON APPELLATE ATTORNEY'S FEES

In Issue Ten, United Fire seeks clarification regarding when post-judgment interest would begin to run on any attorney's fees award to which the Kunz Defendants would be entitled if they

prevailed on appeal.[17] United Fire correctly points out that pursuant to the parties' Rule 11 Agreement, the trial court awarded the Kunz Defendants the attorney's fees they had incurred to date, stating that post-judgment interest on those awards would begin to run from the date of the trial court's judgment. However, it then set forth the amount of attorney's fees to which the Kunz Defendants would be entitled if they were successful on appeal, but was silent as to when post-judgment interest would begin to run on any such award, simply stating that it would "bear post-judgment interest at the rate of 7% per annum."

We agree with United Fire and hereby clarify that post-judgment interest on a contingent award of appellate attorney's fees will not begin to accrue until the appellate court enters its judgment and the matter is resolved in the party's favor to whom the fees were contingently awarded. *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 381–382 (Tex. App.—El Paso 2022, no pet.) ("[i]interest on a conditional award of attorney's fees for prosecuting an unsuccessful appeal begins to accrue from the time the appellate court renders its judgment, rather than the from the time when the trial court signs its judgment") (citing *Ventling v. Johnson*, 466 S.W.3d 143, 156–57 (Tex. 2015) recognizing that an "award for conditional appellate attorney's fees accrues post-judgment interest from the date the award is made final by

---

[17] The Kunz Defendants argue that because United Fire did not raise this "issue" in the trial court, it waived its right to raise the issue on appeal. The Kunz Defendants correctly point out that any error in the "calculation of interest in a judgment must be raised in the trial court in the first instance." *See 1st & Trinity Super Majority, LLC v. Milligan*, 657 S.W.3d 349, 381 (Tex. App.—El Paso 2022, no pet.) (citing *Watts v. Oliver*, 396 S.W.3d 124, 133–34 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (complaint that the trial court misapplied the law in awarding a six-percent rate of interest on the attorney's fees award was not a challenge to the legal sufficiency of the judgment and therefore had to be raised in the trial court in the first instance)); *see also Allright, Inc. v. Pearson*, 735 S.W.2d 240, 240 (Tex. 1987) (per curiam) (stating that error in prejudgment interest must be preserved); *Robertson County v. Wymola*, 17 S.W.3d 334, 344 (Tex. App.—Austin 2000, pet. denied) (county waived its right to challenge the trial court's alleged error in awarding prejudgment interest on a judgment where it failed to challenge the award in the trial court). But here, United Fire is not arguing a post-judgment interest accrual error and the parties seem to recognize there was no error; the trial court's judgment was simply silent as to when the interest would begin to accrue on the contingent attorney's fee award. We therefore find the Kunz Defendants' error preservation argument irrelevant.

the appropriate appellate court's judgment"); *see also Raia v. Crockett*, No. 03-16-00562-CV, 2017 WL 2062268, at \*9 (Tex. App.—Austin May 10, 2017, pet. denied) (mem. op., not designated for publication) (same)).

United Fire's Issue Ten is sustained.

## CONCLUSION

The trial court's judgment is affirmed. We award in our judgment the conditional appellate attorney's fees set forth in the trial court's final judgment to the Kunz Defendants, with post-judgment interest to begin accruing from the date of entry of our judgment.

LISA J. SOTO, Justice

October 31, 2023

Before Rodriguez, C.J., Palafox, and Soto, JJ.