COURT OF CHANCERY
OF THE
STATE OF DELAWARE

SELENA E. MOLINA
SENIOR MAGISTRATE IN CHANCERY

LEONARD L. WILLIAMS JUSTICE CENTER
500 NORTH KING STREET, SUITE 11400
WILMINGTON, DE 19801-3734

Submitted: January 14, 2026
Final Report: January 16, 2026

Melissa N. Donimirski, Esquire
Stevens & Lee, P.C.
919 N. Market Street, Suite 1300
Wilmington, DE 19801

David S. Eagle, Esquire
Sally E. Veghte, Esquire
Klehr Harrison Harvey
Branzburg LLP
919 N. Market Street, Suite 1000
Wilmington, DE 19801

Re:  *Kalkomey Enterprises, LLC, et al. v. Mitchell Strobl, et al.*,
C.A. No. 2025-0550-SEM

Dear Counsel:

As and for the reasons explained in this report, I recommend the complaint in this action be dismissed for failure to state a claim. The plaintiffs' claims for breaches of contracts, trade secrets misappropriation, tortious interference, and unjust enrichment are not supported by well-pled factual averments; they rely, instead, on unsupported inferences, suspicions, and conjecture.

The big picture: the plaintiffs are frustrated that their former employees are competing with them and, it seems, regret only agreeing to a one-year non-competition provision in the underlying employment agreements. But the plaintiffs' attempt to convert such permitted competition into unsupported claims for breach of non-solicitation and confidentiality provisions (and related tort and equity claims)

should not survive the pleadings. Even with a plaintiff-friendly standard of review, the plaintiffs fail to state any claims on which relief may be granted. The complaint should be dismissed with prejudice. This is my final report.

## I.    BACKGROUND[1]

This action is an employment-related dispute whereby Kalkomey Enterprises, LLC and Kalkomey Holdings, LLC (the "Plaintiffs")[2] contend former employees Mitchell Strobl and Jacob Waldrop (the "Defendants") breached their employment agreements, violated the Texas Uniform Trade Secrets Act (the "TUTSA"), tortiously interfered with the Plaintiffs' prospective contracts and business relationships, and have otherwise been unjustly enriched by their post-separation conduct.

### A.    The Parties

The Plaintiffs are Delaware companies which together provide online recreational-safety education, partnering with more than 100 government agencies to create courses, education materials, and software solutions to make recreation safe

---

[1] The facts are drawn from the Plaintiffs' verified complaint. Docket Item ("D.I.") 1 ("Compl.").

[2] I treat the Plaintiffs as operating in tandem, although the Employment Agreements (as defined herein) were executed solely by Kalkomey Enterprises, LLC and the Letters of Transmittal (as defined herein) related to units of Kalkomey PI Holdings, LLC. Compl. Ex. 1, 2, 6, 7.  Those distinctions are not material to the holdings herein.

and accessible and reduce the risk of accidents and injuries.[3] The Plaintiffs offer 360

regulatory-approved education courses through the United States and Canada.[4] In

addition to training, the Plaintiffs provide software solutions for state and provincial

agencies and distribute regulations for outdoor activities and mobile field

applications.[5] The Plaintiffs have their principal place of business in Richardson,

Texas, but, as noted, operate throughout North America.[6]

The Defendants are former employees of the Plaintiffs. Defendant Strobl is

the former Executive Vice President and General Manager of Software.[7] Strobl

began his employment around July 2012, working in various capacities until his

promotion to Vice President of Agency Solutions in 2020.[8] In connection therewith,

on April 24, 2020, he and the Plaintiffs executed an employment agreement.[9]

Therein, he agreed to, among other things: (1) a 12-month non-compete, (2) a 24-

month non-solicit, and (3) a perpetual confidentiality clause protecting the Plaintiffs'

---

[3] Compl. ¶¶ 1, 5–6, 13.

[4] Compl. ¶ 13.

[5] Compl. ¶ 1.

[6] Compl. ¶ 1, 5-6.

[7] Compl. ¶ 19.

[8] Compl. ¶¶ 14–15.

[9] Compl. Ex. 1.

confidential information. In 2021, Strobl was promoted again to Executive Vice President and General Manager of Software.[10]

Defendant Waldrop is the former Executive Vice President and General Manager of Education.[11] Waldrop began his employment with the Plaintiffs in 2014, serving in various capacities until his promotion to Vice President of Marketing in 2020.[12] Like Strobl, Waldrop and the Plaintiffs executed an employment agreement in connection with his promotion on April 24, 2020.[13] The terms match those in Strobl's agreement (together, the "Employment Agreements").[14] Waldrop was promoted again to Executive Vice President and General Manager of Education in January 2021.[15]

The Defendants have both left their executive positions. Waldrop resigned on May 13, 2022 and, it appears, Strobl left around the same time, although it is unclear from the pleadings.[16] On October 16, 2023, Strobl, Waldrop, and a third party

---

[10] Compl. ¶ 19.

[11] Compl. ¶ 26.

[12] Compl. ¶¶ 21–22.

[13] Compl. ¶ 22.

[14] Compl. Ex 1, 2.

[15] Compl. ¶ 26.

[16] Compl. ¶ 28.

founded and incorporated Recademics, as a Texas LLC ("Recademics").[17] Recademics purports to offer boating and hunting courses in all fifty states, working with government agencies as its customers or business partners.[18]

After the Defendants' departure and creation of a competing business entity, the Plaintiffs were acquired by a new parent company through a May 15, 2024 equity purchase agreement.[19] The Defendants remained equity holders and executed letters of transmittal agreeing to be bound by the equity purchase agreement (the "Letters of Transmittal").[20] The Letters of Transmittal contained confidentiality provisions barring the Defendants from disclosing the Plaintiffs' confidential information, as defined therein.[21]

## B. The Dispute

The Plaintiffs contend the Defendants have breached their obligations under the Employment Agreements and Letters of Transmittal and have otherwise acted inappropriately in connection with their post-separation business at Recademics. Specifically, the Plaintiffs aver that the Defendants have and are soliciting the

---

[17] Compl. ¶ 29.

[18] Compl. ¶ 30, 31, 38.

[19] Compl. ¶ 32.

[20] *See* Compl. Ex. 6, 7.

[21] Compl. Ex. 6, at 12; Compl. Ex. 7, at 12.

Plaintiffs' clients through the Recademics website, which provides that government agencies are Recademics' customers or business partners, and Strobl's LinkedIn post announcing his position with Recademics. Through that posting, attached to the complaint, Strobl announced that he had co-founded Recademics, with Waldrop and another third party. Strobl touted their collective expertise and Recademics' plan to leverage technology and business expertise to grow and scale its business.

Strobl's posting generated some traction. By the date captured, October 22, 2024, the post had 169 likes, 58 comments, and 1 repost. Within those comments were congratulatory remarks from employees or agents of the Ohio Division of Wildlife, the Tennessee Wildlife Resources Agency, and the Washington Department of Fish & Wildlife.[22] The Plaintiffs contend Strobl, through the posting and his responses to the congratulatory remarks, has solicited such agencies in breach of his contractual obligations.

---

[22] *See* Compl. Ex. 4 (reflecting comments from the employees or agents, respectively, as: (1) "Wonderful! I'm excited to learn more about this, congratulations Mitch!" with Strobl's response of "thank you! Would absolutely love to connect [emoji omitted]", (2) "How exciting! Looking forward to seeing what you all have in store!", with Strobl's response of "Thank you! Will definitively have to touch base in more detail soon. Hope all is well on your end, sir!", and (3) "Right on, would love to learn more about this new venture," with Strobl's response "Tom! Would absolutely love to connect. I'll reach out soon and we can get something on the calendar. Might even have to make it a coffee stop again [emoji omitted]".

## C.    Procedural Posture

The Plaintiffs initiated this action on May 16, 2025.[23] In their complaint, the Plaintiffs pled six counts: (1) breach of the Employment Agreements, (2) breach of the Letters of Transmittal, (3) violations of the TUTSA, (4) tortious interference with prospective contracts and business relations, (5) unjust enrichment, and (6) injunctive relief.

On July 10, 2025, the Defendants moved to dismiss.[24] In or around September 2025, the original judicial officer, Vice Chancellor Fioravanti, scheduled the motion for oral argument on February 16, 2026.[25] The Chancellor, thereafter, reassigned this action to me and I moved the argument date up one month, to January 14, 2026. Argument went forward as scheduled and this is my final report.

## II.    ANALYSIS

The Defendants moved to dismiss the complaint in its entirely for failure to state a claim under Court of Chancery Rule 12(b)(6). The standard for dismissal under Rule 12(b)(6) is settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and [iv] dismissal is inappropriate

---

[23] D.I. 1.

[24] D.I. 7.

[25] *See* D.I. 25.

> unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[26]

Although this is a plaintiff-friendly standard, the Court is not permitted to "simply accept conclusory allegations unsupported by specific facts, nor do we draw unreasonable inferences" in favor of the pleader.[27] The Plaintiffs ask me to do both; I refuse and hold their complaint must be dismissed.

The Plaintiffs allege that the Defendants breached the Employment Agreements by soliciting the Plaintiffs customers.[28] But the Plaintiffs' pleading is devoid of any factual averments as to which of the Plaintiffs' customers were so solicited. Even if, with the most plaintiff-friendly eyes, I treat the website, LinkedIn posting, and comments thereon as reflecting some level of solicitation, the Plaintiffs fail to identify any of the allegedly solicited agencies as their customers. The non-solicitation clauses require that connection by only barring solicitation of "any customer, vendor, supplier or other business partner of [the Plaintiffs] or any of its Affiliates[.]"[29] Merely averring that the Defendants solicited unnamed customers

---

[26] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal quotations omitted).

[27] *Clinton v. Enter. Rent-A-Car Co.*, 977 A.2d 892, 895 (Del. 2009).

[28] The Employment Agreements, by their terms, are to be "governed by, and construed in accordance with, the internal law of the State of Texas[.]" Compl. Ex. 1, at 11; Compl. Ex. 2, at 11.

[29] Compl. Ex. 1, at 4; Compl. Ex. 2, at 4.

through their operation of a competitive business is conclusory and non-specific.[30]

And, again, for the only specific entities allegedly solicited, the Plaintiffs have not averred that such were customers of the Plaintiffs. On these bases, the Plaintiffs claims for breach of the non-solicitation clause in the Employment Agreements are not well pled and must be dismissed.[31]

The Plaintiffs allege that the Defendants breached the Employment Agreements and the Letters of Transmittal by misusing the Plaintiffs' confidential information.[32] But the factual support for such allegations is even less than for the non-solicitation claim. The Plaintiffs seek a pleading stage inference that because

---

[30] This is particularly true when reviewing the other provisions of the Employment Agreements. In addition to the non-solicitation and confidentiality provisions addressed in this action, the Employment Agreements contained a 12-month non-competition provision. Compl. Ex. 1, at 4; Compl. Ex. 2, at 4. To interpret the non-solicitation provision to effectively bar competition would render the non-competition provision meaningless. Not only is that against contract interpretation principles, but it goes against the clear intention of the parties as reflected in the Employment Agreements that competition was only barred for 12-months while solicitation was off the table for an additional year. *See Ewing Constr. Co. v. Amerisure Ins. Co.*, 420 S.W.3d 30, 37 (Tex. 2014) ("[I]nterpretations of contracts as a whole are favored so that none of the language in them is rendered surplusage."). The provisions must be interpreted as distinct obligations and restrictions. To grant the inferences the Plaintiffs seek would do otherwise.

[31] With this holding, I decline to address the alternative arguments for dismissal for failure to plead damages and unenforceability.

[32] Unlike the Employment Agreements, the Letters of Transmittal are to be "governed by and construed and enforced in accordance with laws of the State of Delaware[.]" Compl. Ex. 6, at 11; Compl. Ex. 7, at 11.

the Defendants founded and are running Recademics, they must be using the Plaintiffs' confidential information. That inference is not supported by the pleadings.

The Plaintiffs rely heavily on *PT China LLC v. PT Korea LLC*, to argue that such an inference is warranted.[33] In *PT China*, at least in relevant part, a principal was sued for allegedly breaching his contractual obligations and fiduciary duties by engaging in competitive business endeavors. Specifically, the principal was bound by (1) an exclusivity provision, requiring him to be engaged primarily with a specific business and barring him from engaging in related business endeavors, and (2) a confidentiality provision. Serving in a fiduciary capacity, he also owed a duty of loyalty. In the operative pleading, he was accused of breaching his duties by forming a competitive business entity, usurping corporate opportunities, disclosing confidential information, and misappropriating resources. While reviewing the factual allegations to determine if the Court had personal jurisdiction over the principal under 6 *Del. C.* § 18-109, the Court noted: "If the Court accepts that [the principal] inappropriately created a competing entity, . . . it is only a small step to infer, at least at this stage in the proceeding, that he would use information acquired

---

[33] 2010 WL 761145, at *6 (Del. Ch. Feb. 26, 2010).

from [the entity with exclusivity] for that [inappropriately created] entity's benefit."[34]

To make that same inference here would be a large, unsupported leap. Here, the parties negotiated for separate non-compete and non-solicit provisions, with different timelines. The non-compete ended by its own terms for the challenged competitive conduct began. Thus, the Defendants' founding and operation of Recademics was not contractually barred or inappropriate like the conduct at issue in *PT China*. It would be inappropriate to infer, even at the plaintiff-friendly pleading stage, that such permissible conduct equals misuse of confidentiality information. *PT China* is, thus, distinguishable on the facts and posture. Through the complaint, the Plaintiffs have failed to state viable claims that the Defendants breached the confidential information provisions in the Employment Agreements or the Letters of Transmittal.

The Plaintiffs further alleged violations of the TUTSA. But the Plaintiffs failed to plead the existence of any protected trade secrets and misuse or misappropriation thereof. Rather, the Plaintiffs plead in conclusory fashion that they have, and the Defendants had access to, types of documents and data that would fall within the broad definition of trade secrets under the TUTSA. That is not enough to

---

[34] *Id.*

identify a trade secret as part of pleading a misappropriation claim.[35] Premised on this conclusory and broad trade secret assertion, the Plaintiffs ask for a pleading-stage inference that the Defendants must be using such trade secrets in their competitive business enterprise. That is not a reasonable inference for all the reasons provided above.[36] This claim must be dismissed.

The same is true for the tortious interference claim. The Plaintiffs seek an inference that the Defendants' competitive business amounts to them tortiously interfering with the Plaintiffs' prospective contracts and business relations. That is, again, a leap too far. Competition, particularly competition permitted by contract, does not equal tortious interference.

Adopting the Plaintiffs' rule statements for tortious interference with contract, the Plaintiffs needed to plead factual averments supporting "(1) the existence of a valid contract subject to interference; (2) that the defendant willfully and intentionally interfered with the contract; (3) that the interference proximately

---

[35] *See Topstone Comm., Inc. v. Xu*, 729 F. Supp. 3d 701, 706 (S.D. Tex. 2024) (explaining plaintiffs must plead facts "with enough clarity for defendants to understand how each claimed trade secret differs from information in the public domain."). Because I find this conclusory pleading ineffective, I need not consider the additional arguments for dismissal premised on, for example, the lack of averments addressing protective measures.

[36] Because I conclude the pleadings are devoid of any factual averments supporting misappropriation, I decline to address the Defendants' argument that the Plaintiffs also failed to plead injury.

caused the plaintiff's injury; and (4) that the plaintiff incurred actual damage or loss."[37] The Plaintiffs failed to do so; they did not identify any contracts subject to interference nor willful and intentional interference therewith. All they alleged was competition, something permitted after a 12-month non-compete period.

Similarly, adopting the Plaintiffs' rule statements for tortious interference with prospective relations, the Plaintiffs needed to plead factual averments that "(1) there was a reasonable probability that the plaintiff would have entered into a business relationship with a third party; (2) the defendant either acted with a conscious desire to prevent the relationship from occurring or knew the interference was certain or substantially certain to occur as a result of the conduct; (3) the defendant's conduct was independently tortious or unlawful; (4) the interference proximately caused the plaintiff injury; and (5) the plaintiff suffered actual damage or loss as a result."[38] The Plaintiffs failed to plead a business relationship or tortious conduct interfering therewith. Again, they merely plead contractually permitted competition.[39]

---

[37] D.I. 21, at 40 (*citing Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 689 (Tex. 2017)).

[38] D.I. 21, at 40–41 (*citing Coinmach Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 923 (Tex. 2013)).

[39] Because I find the tortious interference claims are not well-pled, I need not address the Defendants' alternative preemption argument.

The Plaintiffs' unjust enrichment count fares no better. In the complaint, the Plaintiffs allege the Defendants gained an undue advantage and were unjustly enriched through unauthorized use of the Plaintiffs' confidential information and trade secrets. As explained above, however, the Plaintiffs failed to adequately plead such misuse; the conclusory and vague allegations are insufficient and the conjectural leaps unsupported. This claim should be dismissed.

The final count was for injunctive relief. Injunctive relief is not a claim, it is a request for relief which must be premised on an underlying claim.[40] Even if any of the above survived, this count would be dismissed as improperly pled.[41] With the above ruling, all claims and requests for relief should be dismissed, leaving nothing upon which injunctive relief could be premised.

## III.  CONCLUSION

For these reasons, the Defendants' motion to dismiss should be granted and the complaint dismissed in full. The Plaintiffs argued that dismissal should be without prejudice to allow the Plaintiffs the chance to amend and bolster the factual

---

[40] *See Quadrant Structured Prod. Co. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014) ("[i]njunctions are a form of relief, not a cause of action.").

[41] *See, e.g., Lidya Hldgs. Inc. v. Eksin*, 2022 WL 274679, at *7 (Del. Ch. Jan. 31, 2022) ("[Plaintiff] has not pled any future act for the Court to enjoin, much less a cause of action to which his prayer for injunctive relief would attach. [The injunctive relief count] fails.").

predicate. But the Plaintiffs chose to stand on the complaint, missed their amendment window, and have failed to demonstrate good cause for allowing amendment now.

Under Rule 15(a)(5)(A), "[i]f a party wishes to amend the party's complaint in response to a motion to dismiss under Rules 12(b)(6) . . . the party must amend the party's complaint—or seek leave to amend—. . . before the party's response to the motion is due[.]" Under Rule 15(a)(5)(B): "If a party neither amends nor moves to amend by the time set forth in Rule 15(a)(5)(A), a dismissal under Rule 12(b)(6) . . . will be with prejudice . . . unless the Court for good cause shown dismisses the complaint without prejudice."

Here, the Plaintiffs had the chance to amend in response to the motion to dismiss, failed to do so, and have failed to articulate good cause to depart from Rule 15. Dismissal should be with prejudice.

This is a magistrate's final report under Court of Chancery Rule 144.

Respectfully,

*/s/ Selena E. Molina*

Senior Magistrate in Chancery